**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATTHEW GRACE | ) |
| 1449 Lawrence Street, N.E. | ) |
| Washington, D.C. 20017, | ) |
| | ) |
| and | ) Civil Action No. 15-2234 |
| | ) |
| PINK PISTOLS | ) |
| 163 N. Whitehall Road | ) |
| Jeffersonville, PA 19403, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| Serve: Mayor Muriel Bowser | ) |
| c/o Office of Attorney General | ) |
| 441 4th Street, N.W. | ) |
| Washington, D.C. 20001, | ) |
| | ) |
| and | ) |
| | ) |
| CATHY LANIER, in her official capacity as | ) |
| Chief of Police for the Metropolitan Police | ) |
| Department | ) |
| 300 Indiana Avenue, N.W. | ) |
| Washington, D.C. 20001, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COME the Plaintiffs, MATTHEW GRACE and PINK PISTOLS, by and through

undersigned counsel, as and for their Complaint against Defendants the DISTRICT OF

COLUMBIA and CATHY LANIER, and state as follows:

1.     In a recent appearance on the television show 60 Minutes, Defendant Lanier made

clear that swift civilian intervention may be the key to saving lives in a potential mass shooting

incident: "If you're in a position to try and take the gunman down, to take the gunman out, it's the best option for saving lives before police can get there." Residents of the District of Columbia, however, are very unlikely to be in a position to intervene to stop an armed gunman or other violent criminal because the District of Columbia prohibits typical, law-abiding citizens from carrying firearms outside the home. Indeed, the District purports to limit the right to carry a firearm in public to individuals the District deems to have a "proper reason" to exercise this fundamental, constitutional right. And District law makes clear that the District does not consider the general desire of a law-abiding, responsible citizen to carry a firearm for self-defense to be a proper reason. The effect of the District's law thus is to strip law-abiding citizens of their right to bear arms. Plaintiffs bring this action to end this unconstitutional infringement of Second Amendment rights.

## THE PARTIES

2.      Plaintiff Matthew Grace is a citizen of the United States and a resident and citizen of Washington, D.C.

3.      Plaintiff Pink Pistols is a shooting group that honors diversity and is open to all shooters regardless of sexual orientation. There are dozens of Pink Pistols chapters located across the country. The organization advocates the use of lawfully owned, lawfully concealed carry firearms for the self-defense of the sexual minority community. Indeed, the formation of Pink Pistols was inspired by a statement by Jonathan Rauch published in Salon Magazine in 2000: "[H]omosexuals should embark on organized efforts to become comfortable with guns, learn to use them safely and carry them. They should set up Pink Pistols task forces, sponsor shooting courses and help homosexuals get licensed to carry. And they should do it in a way that gets as much publicity as possible." Pink Pistols believes that the right to bear arms is particularly

important for members of discriminated against minorities, as Justice Alito recognized in his controlling opinion in *McDonald v. City of Chicago*: "*Amici* supporting incorporation of the right to keep and bear arms contend that the right is especially important for women and members of other groups that may be especially vulnerable to violent crime." 561 U.S. 742, 790 & n.33 (2010) (citing, among other things, Brief for Pink Pistols et al. as *Amici Curiae* in *District of Columbia v. Heller*, O.T. 2007, No. 07-290). The District of Columbia's restrictive carry laws are a direct affront to Pink Pistols' central mission. Pink Pistols has members who reside in Washington, D.C.

4.      Defendant District of Columbia is a municipal entity organized under the Constitution and laws of the United States.

5.      Defendant Cathy Lanier is being sued solely in her official capacity as the Police Chief for the Metropolitan Police Department of the District of Columbia. Ms. Lanier is the head and chief of the police force and is responsible for enforcing the laws of the District of Columbia that are at issue in this lawsuit. *See* D.C. CODE §§ 5-127.03, 7-2509.11, and 22-4506.

## JURISDICTION

6.      Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343.

7.      This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988.

8.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

9.      Before a recent decision of this Court, the District of Columbia generally banned law-abiding, responsible citizens from carrying firearms outside the home. In *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), however, this Court held that the District's ban

3

violated the Second Amendment. In response, the District enacted legislation creating a

concealed carry licensing system that continues to deny typical, law-abiding citizens the right to

carry firearms in public.

10.     District of Columbia law now provides that "[n]o person shall carry within the

District of Columbia either openly or concealed on or about their person, a pistol, *without a*

*license issued pursuant to District of Columbia law . . . .*" D.C. CODE § 22-4504(a) (emphasis

added). First-time offenders who violate this provision by carrying a handgun in public face up

to five years in prison. *Id.* § 22-4504(a)(1). District of Columbia law also generally prohibits the

carrying of a rifle or a shotgun in public. *Id.* § 22-4504(a-1).

11.     Chief Lanier "may" issue a concealed carry license only "if it appears that the

applicant has good reason to fear injury to his or her person or property or has any other proper

reason for carrying a pistol . . . ." *Id.* § 22-4506(a). Thus, while Chief Lanier apparently is in no

event *required* to issue a concealed carry license, she may only exercise her discretion to *grant* a

license if she deems the "proper reason" requirement satisfied.

12.     Furthermore, the District of Columbia does not consider a typical, law-abiding

citizen to have a "proper reason" for carrying a handgun. Indeed, the law expressly directs Chief

Lanier to issue rules establishing that the phrase "good reason to fear injury to his or her

person . . . shall at a minimum require a showing of a *special need for self-protection*

*distinguishable from the general community* as supported by evidence of specific threats or

previous attacks that demonstrate a special danger to the applicant's life." *Id.* § 7-2509.11(1)(A)

(emphasis added). Similarly, the phrase "any other proper reason for carrying a concealed

pistol . . . shall at a minimum include types of employment that require the handling of cash or

other valuable objects that may be transported upon the applicant's person." *Id.* § 7-2509.11(1)(B).

13.    According to these provisions, typical, law-abiding citizens effectively remain subject to a flat ban on carrying firearms outside the home. This conclusion is reinforced by the following rules issued by Chief Lanier:

- "A person shall demonstrate a good reason to fear injury to his or her person by **showing a special need for self-protection distinguishable from the general community** as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life." D.C. MUN. REGS. tit. 24, § 2333.1 (emphasis added).

- "For the purposes of satisfying the specifications of § 2333.1, a person shall allege, in writing, **serious threats of death or serious bodily harm, any attacks on his or her person, or any theft of property from his or her person**. The person shall also allege that the threats are of a nature that the legal possession of a pistol is necessary as a reasonable precaution against the apprehended danger." *Id.* § 2333.2 (emphasis added).

- "The person shall provide all evidence of contemporaneous reports to the police of such threats or attacks, and disclose whether or not the applicant has made a sworn complaint to the police or the courts of the District of Columbia concerning any threat or attack." *Id.* § 2333.3.

- "**The fact that a person resides in or is employed in a high crime area shall not by itself establish a good reason to fear injury to person or property for the issuance of a concealed carry license.**" *Id.* § 2333.4 (emphasis added).

- "A person may allege any other proper reason that the Chief may accept for obtaining a concealed carry license which may include: (a) Employment of a type that requires the handling of large amounts of cash or other highly valuable objects that must be transported upon the applicant's person; or (b) The need for a parent, son, daughter, sibling, or other adult member of the immediate family to provide protection of a family member who is physically or mentally incapacitated to a point where he or she cannot act in defense of himself or herself, and the family member who is physically or mentally incapacitated can demonstrate a good reason to fear injury to his or her person by showing a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life in the manner described in § 2333." *Id*. § 2334.1.

14. These limitations are further reflected in the application form for a concealed carry license. For example, the application form states that "an applicant must demonstrate that either they have good reason to fear injury to himself or herself or property or they have another proper reason for carrying a concealed pistol." And an attachment to the application form makes clear that "[p]ursuant to District of Columbia law, the fact that you live or work in a high crime area shall not by itself establish a good reason to fear injury to yourself or your property for the issuance of a concealed carry license."

15. In summary, the District of Columbia restricts concealed-carry licenses to individuals the District deems to have a "proper reason" to carry a firearm in public, and the District does not consider the general desire to carry a firearm for self-defense to be a "proper reason." The result is that typical, law-abiding citizens of the District of Columbia effectively are

6

barred from carrying firearms in public, a result that cannot be squared with the rights guaranteed by the Second Amendment.

## STATEMENT OF FACTS

16.     Plaintiff Matthew Grace is a law-abiding, responsible, adult resident of the District of Columbia. He attended school in the District at Gonzaga College High School and The Catholic University of America. Mr. Grace works as a financial advisor and he also is an owner of a company that owns and manages rental real estate in the District. He is a member of Pink Pistols.

17.     Mr. Grace owns four handguns that are lawfully registered with the District of Columbia. He keeps these handguns in his home, and he desires to carry them outside the home for self-defense. Mr. Grace has completed the firearms training that is required to obtain a District of Columbia concealed carry license.

18.     Although Mr. Grace does not face specific threats that differentiate him from the typical, law-abiding citizen, many events have confirmed that his desire to carry a firearm for self-defense is well-founded. For example, on one occasion gun shots were fired in front of his home; four shell casings were found directly in front of his home on the sidewalk. There was a person carrying a firearm in his neighborhood robbing people at gunpoint who was never caught. And his wife was robbed on a public street in the District in broad daylight.

19.     Despite his desire to carry a firearm to protect himself outside the home, Mr. Grace refrains from doing so for fear of being prosecuted, convicted, and imprisoned for violating the District of Columbia's laws making carrying a firearm in public a crime. Because he has concealed carry permits issued by Virginia and Utah, and in light of state reciprocity rules, Mr. Grace lawfully may carry a firearm in the majority of the States in the United States.

But because of the District of Columbia's unconstitutional restrictions on carrying firearms, he cannot do so in his own city.

20.     In August 2015, Mr. Grace applied for a District of Columbia concealed carry license. Because Mr. Grace does not have a "special need for self-protection distinguishable from the general community" or any other "proper reason" to carry a firearm under District of Columbia law, in the space provided to support his application Mr. Grace cited the Second Amendment right to carry a firearm.

21.     Mr. Grace's application was denied on October 19, 2015. The denial letter stated that he had failed to "[d]emonstrate a good reason to fear injury to person or property, or other proper reason for a concealed carry license": "Specifically the applicant did not meet the minimum requirement of showing: 'a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life,' . . . and did not demonstrate '[e]mployment of a type that requires the handling of large amounts of cash or other highly valuable objects that must be transported upon the applicant's person.' "

22.     No reason was given for the denial of Mr. Grace's application other than the failure to meet the "proper reason" requirement. Mr. Grace meets all of the other requirements for a concealed carry license, and but for the "proper reason" requirement he would qualify for one.

23.     In light of the District's denial of his application, Mr. Grace continues to refrain from carrying a firearm outside the home for self-defense in the District. Mr. Grace would carry a firearm in public for self-defense in the District were it lawful for him to do so.

## COUNT ONE

### (U.S. CONST. amend. II, 42 U.S.C. § 1983)

24.     Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs.

25.     Mr. Grace lawfully owns firearms, and but for the District of Columbia laws and regulations set forth above, he forthwith would carry those firearms outside the home for self-defense.

26.     Mr. Grace applied for a concealed carry license, but his application was denied solely because he failed to satisfy the District of Columbia's restrictive "proper reason" requirement.

27.     At least one member of Pink Pistols has had an application for a carry license denied solely for failure to satisfy the "proper reason" requirement. But for the District of Columbia laws and regulations set forth above, at least one member of Pink Pistols forthwith would carry a firearm outside the home for self-defense.

28.     The Second Amendment guarantees to law-abiding, responsible, adult citizens the fundamental constitutional right to bear arms outside the home, and that right cannot be subjected to the unfettered discretion of a government official or to whether a government official believes they have a "proper reason" to exercise that right. The denial of Second Amendment rights caused by the District's "proper reason" requirement inflicts irreparable harm on law-abiding, responsible citizens including Mr. Grace.

29.     The aforementioned District of Columbia laws and regulations, both facially and as applied to Mr. Grace and members of Pink Pistols, violate the Second Amendment and therefore are invalid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court:

A.      Enter a declaratory judgment that the District of Columbia's concealed carry laws violate the Second Amendment to the extent they grant discretion to deny licenses to individuals who meet the eligibility requirements;

B.      Enter a declaratory judgment that the District of Columbia's "proper reason" requirement for issuance of a concealed carry license violates the Second Amendment;

C.      Enter an injunction forbidding Defendants and their officers, agents, and employees from denying concealed carry licenses to applicants who meet the eligibility requirements;

D.      Enter an injunction forbidding Defendants and their officers, agents, and employees from enforcing the District of Columbia's laws and regulations establishing and further defining the "proper reason" requirement, including D.C. CODE §§ 22-4506(a) and 7-2509.11 and D.C. MUN. REGS. tit. 24, §§ 2332.1, 2333.1, 2333.2, 2333.3, 2333.4, and 2334.1, to deny concealed carry licenses to applicants who desire to carry a handgun in public for self-defense and other lawful purposes;

E.      Enter an injunction directing Defendants and their officers, agents, and employees to issue concealed carry licenses to Mr. Grace and to members of Pink Pistols who, apart from the "proper reason" requirement, are otherwise eligible for a concealed carry license;

F.      Enter an Order awarding Plaintiffs their costs of suit including attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and,

G.      Enter an Order providing any other and further relief that the Court deems just and appropriate.

Dated:  December 22, 2015                  Respectfully submitted,

                                           s/ David H. Thompson
                                           David H. Thompson (Bar No. 450503)
                                           Peter A. Patterson (Bar No. 998668)
                                           COOPER & KIRK, PLLC
                                           1523 New Hampshire Avenue, N.W.
                                           Washington, D.C. 20036
                                           (202) 220-9600

                                           *Attorneys for Plaintiffs*