# EXHIBIT 1

No. 15–2234

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MATTHEW GRACE and | ) | |
| PINK PISTOLS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 15-2234 (RJL) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA and | ) | |
| CATHY LANIER, in her official capacity as | ) | |
| Chief of Police for the Metropolitan Police | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION TO CONSOLDIATE THE PRELIMINARY INJUNCTION**
**PROCEEDINGS WITH THE DETERMINATION ON THE MERITS**

Charles J. Cooper (Bar No. 248070)
David H. Thompson (Bar No. 450503)
Peter A. Patterson (Bar No. 998668)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................3

ARGUMENT............................................................................................................................4

      I.      This Court Has Broad Discretion To Consolidate Preliminary Injunction
           Proceedings with the Merits.........................................................................................4

      II.     The Court Should Enter a Preliminary and Permanent Injunction Now,
           Without Further Briefing or Discovery...................................................................5

           A.     The Parties Have Already Exhaustively Addressed
                  All Relevant Issues. ...................................................................................5

           B.     As a Matter of Law, the Additional Facts the Government Wishes To
                  Develop Cannot Justify the "Proper Reason" Requirement. .......................9

           C.     *Heller* Itself, Among Other Decisions, Establishes that Further
                  Proceedings Are Unnecessary...................................................................15

CONCLUSION.......................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**     **Page**

\* *Association of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151 (D.C. Cir. 1979)............................7

*Curtis 1000, Inc. v. Suess*, 24 F.3d 941 (7th Cir. 1994)..............................................5

*D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir. 2002) ............6

*Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999)............................................................7, 8

\* *District of Columbia v. Heller*, 554 U.S. 570 (2008)........................................2, 9, 11, 15

*Drummond v. Fulton Cty Dep't of Family & Children's Servs.*, 563 F.2d 1200 (5th Cir. 1977) .........................................................7

*Dunagin v. City of Oxford, Miss.*, 718 F.2d 738 (5th Cir. 1983) .................................8

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ...............................................8

\* *Heller v. District of Columbia ("Heller III")*, 801 F.3d 264 (D.C. Cir. 2015)............................12

\* *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244 (D.C. Cir. 2011) .................9, 11, 14

*Hoai v. Superior Court of the District of Columbia*, 473 F. Supp. 2d 75 (D.D.C. 2007)...........4, 6

*Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174 (7th Cir. 1990)...........7

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) .......................................12, 13

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).......................................1, 10

\* *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012)...............................2, 8, 10, 15, 16

*Moore v. Madigan*, 842 F. Supp. 2d 1092 (C.D. Ill. 2012) ..................................15

\* *Morris v. District of Columbia*, 38 F. Supp. 3d 57 (D.D.C. 2014)..............................4, 5

*National R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 2003 WL 26132936 (D.D.C.) .............5, 6

*Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) ...............................1

*Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007)......................................2

*Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014) .................................17

*Roper v. Simmons*, 543 U.S. 551 (2005).................................................8

*Shepard v. Madigan*, 863 F. Supp. 2d 774 (S.D. Ill. 2012) ...................................15

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994).......................................13, 14

*United States v. Virginia*, 518 U.S. 515 (1996) ......................................8, 12, 13

*Wrenn v. District of Columbia*, 808 F.3d 81 (D.C. Cir. 2015) ...................................1

*Wrenn v. District of Columbia*, 107 F. Supp. 3d 1 (D.D.C. 2015) .............................1, 14

**Statutory Materials, Regulations, and Rules**

D.C. CODE

§ 7-2509.11(1)(A) ..................................................................................3

§ 7-2509.11(1)(B) ..................................................................................3

§ 22-4504(a) ..........................................................................................3

§ 22-4506(a) ..........................................................................................3

D.C. MUN. REGS. tit. 24

§ 2333.1..............................................................................................3, 4

§ 2333.2..............................................................................................3, 4

§ 2333.4..............................................................................................3, 4

§ 2334.1............................................................................................. 3, 4

FED. R. CIV. P. 65(a)(2)........................................................................2, 4

FED. R. EVID. 201 advisory committee's note ..............................................8

**Other**

Mike DeBonis, *Security, Not Street Crime, at Risk After Gun Ruling, D.C. Police Chief Cathy Lanier Says*, WASH. POST, https://goo.gl/wPYekP ............................................................13, 14

## INTRODUCTION

The Supreme Court has "held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense," *McDonald v. City of Chicago*, 561 U.S. 742, 749–50 (2010) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)), yet since *Heller* the District of Columbia has continued to deny its citizens the right to "bear arms for the purpose of self-defense." This Court has held that an earlier incarnation of the District's prohibition on the right to bear arms violates the Second Amendment, *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), yet rather than appeal that decision, the District simply mooted the case by passing a new law that *still* denies Plaintiff Matthew Grace and other typical, law-abiding citizens the right to bear arms in public for self-defense. And this Court has already held that *the new law*—the law at issue in this case—violates the Second Amendment, *Wrenn v. District of Columbia*, 107 F. Supp. 3d 1 (D.D.C. 2015), though that decision was vacated on appeal for reasons unrelated to the merits, *Wrenn v. District of Columbia*, 808 F.3d 81 (D.C. Cir. 2015).

Nearly a decade after *Heller*, the District's dogged insistence on denying its citizens the core protection of the Second Amendment must finally come to an end. Discovery and further briefing are entirely unnecessary because the relevant adjudicative facts are indisputable and proper resolution of this case is plain: the District's current ban on the right to bear arms is just as unconstitutional as the bans that were struck down in *Heller* and *Palmer*.

Plaintiffs have demonstrated that a preliminary injunction is warranted. Plaintiffs are likely to succeed on the merits, and every other requirement for preliminary relief is amply met. And a *permanent* injunction is necessary, and proper, too. The parties and their amici have already submitted six briefs, spanning more than 160 pages, that canvass the legal, historical, and social science aspects of this case, plus hundreds of pages of appendices that include numerous

primary and secondary sources on both the history and social science of gun control. The parties

and their amici have presented oral argument on Plaintiffs' application for both a preliminary and

permanent injunction. The parties will soon file supplemental briefs reviewing the material

discussed at that hearing. And in addition to its extensive presentation in this case, the District

has had not one, not two, but three recent opportunities to fully brief the constitutionality of this

or its predecessor public-carry law (in *Palmer*, and in *Wrenn* before both this Court and the D.C.

Circuit). And any additional facts the District wishes to present are either legally irrelevant or are

"legislative facts" (as opposed to "adjudicative facts") that have already been fully developed in

the briefs and require no trial or evidentiary hearing.

In fact, the District itself has already effectively admitted that no further briefing is

necessary. At the recent hearing before this Court, the District agreed with this Court's statement

that the parties have amassed a "plentiful record," and it affirmatively stated that there is "more

than enough evidence" in the record to decide this case. Transcript of Preliminary Injunction

Hearing at 58 ("Transcript").

Finally, the District's claimed need for further proceedings is belied by other cases that

have evaluated broad restrictions on the right to keep and bear arms. In *Heller* itself, for

example, both the D.C. Circuit and the Supreme Court decided the case on the merits in favor of

the *plaintiff* on review of a district court decision granting a *motion to dismiss on the pleadings*.

*See Heller*, 554 U.S. at 576, 635; *Parker v. District of Columbia*, 478 F.3d 370, 374, 401 (D.C.

Cir. 2007). The Seventh Circuit did the same in striking down Illinois's ban on carrying firearms

outside the home. *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

Pursuant to Federal Rule of Civil Procedure 65(a)(2), Plaintiffs respectfully reiterate their

request to consolidate the preliminary injunction hearing with the determination of the merits of

Plaintiffs' request for a permanent injunction. The Court should enter, without further briefing or discovery, a permanent injunction striking down the District's requirement that law-abiding citizens show a "good" or "proper" reason before granting them a license to carry a firearm outside the home.

## **BACKGROUND**

District law provides that "[n]o person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law . . . ." D.C. CODE § 22-4504(a). Defendant Cathy Lanier, the Chief of Police for the Metropolitan Police Department, "may" issue a license to carry a concealed firearm only "if it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol . . . ." *Id.* § 22-4506(a). The District's laws and regulations defining this "proper reason" requirement subject typical law-abiding citizens to a flat ban on carrying firearms outside the home. That is because the District does not consider a typical, law-abiding citizen to have a "proper reason" for carrying a handgun. First, the law expressly directs Chief Lanier to issue rules establishing that the phrase "good reason to fear injury to his or her person . . . shall at a minimum require a showing of a *special need for self-protection distinguishable from the general community* as supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life." *Id.* § 7-2509.11(1)(A) (emphasis added). Similarly, the phrase "any other proper reason for carrying a concealed pistol . . . shall at a minimum include types of employment that require the handling of cash or other valuable objects that may be transported upon the applicant's person." *Id.* § 7-2509.11(1)(B). Chief Lanier has issued rules that implement these statutes and extinguish the

right of typical, law-abiding citizens to carry firearms outside the home. D.C. MUN. REGS. tit. 24, §§ 2333.1, 2333.2, 2333.4, 2334.1.

Plaintiffs Matthew Grace and Pink Pistols challenge only the "proper reason" requirement of the District's public carry laws. On December 22, 2015, they filed a complaint challenging the "proper reason" provision. On December 28, 2015, they filed an application for a preliminary and permanent injunction establishing that they are likely to succeed on the merits and that each of the other requirements for preliminary relief are satisfied. After extensive briefing on this application, the Court heard oral argument from parties and amici on February 2, 2016. Both parties have until February 24, 2016 to file supplemental briefs with respect to that argument, two weeks from the date the transcript of the argument was filed on the Court's docket.

## ARGUMENT

### I.  This Court Has Broad Discretion To Consolidate Preliminary Injunction Proceedings with the Merits.

"Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with a hearing." FED. R. CIV. P. 65(a)(2). The Court should consolidate proceedings if the "Court finds that it is able to make a merits determination on the record before it," such as when the Court is presented only "with a question of law, not fact." *Hoai v. Superior Court of The District of Columbia*, 473 F. Supp. 2d 75, 78 n.4 (D.D.C. 2007). It is "particularly appropriate" to consolidate proceedings when "the relevant facts are undisputed, exigent circumstances exist, and granting preliminary relief will effectively give a party all of the relief it would obtain after trial on the merits." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 63 (D.D.C. 2014) (quoting *Kickapoo Traditional Tribe of Texas v. Chacon,* 46 F.Supp.2d 644, 648–49 (W.D. Tex. 1999)).

To be sure, courts typically "provide notice to the parties before consolidating the case on the merits with a motion for a preliminary injunction." *Id.* at 62 n.1. But "the cases requiring notice are not applicable . . . where no factual or legal disputes will remain once the Court resolves the preliminary injunction motion." *Id.* Similarly, "notice is unnecessary" if the Court is deciding "a topic on which the parties have exhaustively aired their positions." *National R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 2003 WL 26132936, at *5 n.2 (D.D.C.), *rev'd on other grounds*, 330 F.3d 523 (D.C. Cir. 2003). "The general point is that when the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment." *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994).

## II.      The Court Should Enter a Preliminary and Permanent Injunction Now, Without Further Briefing or Discovery.

The Court should grant at this time Plaintiffs' application for both a preliminary and permanent injunction. Discovery and further briefing are unnecessary to decide this case, for at least three reasons. First, the parties have already exhaustively briefed all of the relevant issues. Second, the additional facts that the Government wishes to develop cannot, as a matter of law, justify its unconstitutional restriction on the right to bear arms. Third, the Supreme Court's decision in *Heller* itself, among other decisions, establishes that discovery and supplemental briefing are unnecessary.

### A.  The Parties Have Already Exhaustively Addressed All Relevant Issues.

Apart from the history of the Second Amendment, the only even arguably relevant factual issue in this case concerns contemporary social science research about the impact of gun control laws on public safety. The parties have already exhaustively addressed those issues, and no further briefing is necessary.

1. The evidence before the Court is voluminous. The parties and their amici have fully addressed the history of the right to bear arms and the latest social science data in six briefs that span more than 160 pages and have hundreds of additional pages as appendices. Those briefs comprehensively examine numerous Founding-era treatises, statutes, and decisions, as well as contemporary law review articles and judicial decisions on the history of the right to bear arms. Those briefs also cite dozens of studies, academic articles, news reports, and other secondary sources that address the public safety impact of firearms in general and public-carry laws in particular. One of the District's amici, Everytown for Gun Safety, filed a brief devoted entirely to the history of the Second Amendment. Another amicus, the Brady Center to Prevent Gun Violence, filed a brief devoted primarily to reviewing the latest social science data and relying on sources as recent as articles published last month. Both parties presented oral argument to the Court. An amicus for each party also presented oral argument exclusively on the history of the right to bear arms. The parties will have yet another opportunity to provide further briefing on the history and social science in their forthcoming supplemental briefs. The District's briefs in this case build on the earlier briefs that it submitted in the *Palmer* and *Wrenn* cases. And the Court is free, of course, to consider the historical and social science information that the District, the plaintiffs, and amici have filed in this Court and in the D.C. Circuit in those cases.

In short, nothing is to be gained from discovery or further briefing. The Court "is able to make a merits determination on the record before it," *Hoai*, 473 F. Supp. 2d at 78 n.4, and "the parties have exhaustively aired their positions" before the Court, *National R.R. Passenger*, 2003 WL 26132936, at *5 n.2. There is no "relevant evidence that [the District will be] prevented from presenting because of the consolidation." *D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 160 (2d Cir. 2002) (internal quotation marks omitted). The

District was on notice that Plaintiffs have requested, and that the Court might grant, a permanent injunction at this time. The District will suffer no prejudice if the Court enters a permanent injunction now.

2. The relevant factual questions at issue in this case—"facts" about history and social science—are quintessential "legislative facts" that should not be developed in discovery or trial.

The distinction between legislative facts and adjudicative facts is well-established. Adjudicative facts are facts "concerning the immediate parties who did what, where, when, how, and with what motive or intent. . . . They are the facts that normally go to the jury in a jury case." *Association of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1161 (D.C. Cir. 1979) (internal quotation marks omitted). "By contrast, the nature of legislative fact is ordinarily general, without reference to specific parties." *Id.* Because legislative facts concern general knowledge not specific to the parties in the case, "legislative facts . . . need not be developed through evidentiary hearings." *Id*. at 1162.

Other Circuits have likewise acknowledged that " 'legislative facts,' which go to the justification for a statute, usually are not proved through trial evidence but rather by material set forth in the briefs, the ordinary limits on judicial notice having no application to legislative facts." *Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999). "[T]rials are to determine adjudicative rather than legislative facts" because legislative facts are generally established through "facts reported in books and other documents not prepared specially for litigation or refined in its fires." *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990). *See also Drummond v. Fulton Cty Dep't of Family & Children's Servs.*, 563 F.2d 1200, 1210–11 (5th Cir. 1977) ("Trials are seldom desirable either on legislative facts or on broad factual issues.").

7

As the Seventh Circuit recognized in *Moore*, the questions of history and social science at issue in this case are questions of legislative fact properly developed in briefs, not during discovery or evidentiary hearings. 702 F.3d at 942. Moreover, because these questions "go to the justification for [the District's] statute," the "ordinarily limits on judicial notice" do not apply. *Daggett*, 172 F.3d at 112. The Court may thus take judicial notice of all the historical and social science materials cited in the parties' extensive briefs and appendices, as well as in the briefs in related cases. There is no need to conduct further proceedings for those facts to enter the record.

The absence of any need for further proceedings is underscored by the fact that consideration of legislative facts on appeal need not be limited to the record developed in this Court. Indeed, the federal rules make clear that "judicial access to legislative facts" is unconstrained by "any limitation in the form of indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings *at any level*." FED. R. EVID. 201 advisory committee's note, (emphasis added). Accordingly, "[t]he writings and studies of social science experts on legislative facts are often considered and cited by the Supreme Court with or without introduction into the record or even consideration by the trial court." *Dunagin v. City of Oxford, Miss.*, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (collecting examples). The Supreme Court also frequently considers information concerning legislative facts presented by amici. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551, 569 (2005); *Grutter v. Bollinger*, 539 U.S. 306, 330–32 (2003); *United States v. Virginia*, 518 U.S. 515, 544–45 & nn.13–15 (1996). Thus, the record on appeal relating to legislative facts need not be confined to the voluminous materials already presented to this Court.

Finally, there are no questions of "adjudicative fact" that warrant further proceedings. It is undisputed that "Mr. Grace meets all of the other requirements for a concealed carry license, and but for the 'proper reason' requirement he would qualify for one." Compl. for Declaratory J. & Injunctive Relief at ¶ 22 (Dec. 22, 2015), Doc. 1; Answer at ¶ 22 (Jan. 12, 2016), Doc. 16. The only question before this Court, then, is the legal one of whether the proper reason requirement is constitutional.

In sum, both parties have already developed a complete record in this case, and the District would not be prejudiced if this Court were to enter a permanent injunction now.

**B.** **As a Matter of Law, the Additional Facts the Government Wishes To Develop Cannot Justify the "Proper Reason" Requirement.**

The question presented in this case is whether the "proper reason" requirement of the District's public-carry law violates the Second Amendment. To answer that question, the Court must first decide whether the District's law "impinges upon a right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (*Heller II*). The Court must then determine whether the law "passes muster under the appropriate level of constitutional scrutiny." *Id.* If the District's law severely restricts the "core protection" of the Second Amendment, it must be held unconstitutional categorically, not "subjected to a freestanding 'interest-balancing' approach." *District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008); *see also Heller II*, 670 F.3d at 1266–67.

As noted, the only potentially relevant factual issues concern the history of the Second Amendment and, arguably, contemporary social science research about the impact of gun control laws on public safety. Not only have the parties already exhaustively briefed those questions, *supra* Part II.A, but nothing the District possibly could turn up in discovery could change the proper outcome of this case.

1. The Court's answer to the first question—whether the District's law impinges on a right protected by the Second Amendment—turns exclusively on an analysis of the text and history of the Second Amendment. Further briefing on the history of the Second Amendment is unnecessary not simply because the parties have already exhaustively addressed it, but also because the Supreme Court's historical analysis in *Heller* and *McDonald* is dispositive. In those cases, "[t]he Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside," and this Court is "bound by the Supreme Court's historical analysis because it was central to the Court's holding in *Heller*." *Moore*, 702 F.3d at 942, 937. And this Court is likewise bound by the holding of *McDonald* that "the Second Amendment protects the right to keep *and bear* arms for the purpose of self-defense." *McDonald*, 561 U.S. at 749–50 (emphasis added). No further briefing among the parties can abrogate the binding—and dispositive—force of *Heller* and *McDonald*.

When asked at oral argument what additional history it would present, the Government suggested that some "historians are still researching these questions" and that the Court should not decide this case until those "[h]istorians that are working with Everytown" have completed their work. Transcript 36. If that were the rule, no case involving the history of any provision of the Constitution would ever be decided, for there will always be historians with a work-in-progress. At any rate, that the District is *still* scouring the historical records to find some scintilla of support for its position only underscores how out of step the District's law is with the historical tradition of carrying firearms in this country. The history that *has* been written, reflecting the witness of leading commentators (such as Blackstone and St. George Tucker), the Nation's first three Presidents, founding-era State constitutions, and judicial decisions approved by *Heller*, unambiguously demonstrates that the people's right to carry firearms for self-defense

is not limited to the home. *See* Mem. Of Points & Authorities in Supp. of Pls.' Appl. for Prelim. and/or Permanent Inj. at 13–18 (Dec. 28, 2015), Doc. 6-1.

The Court's answer to the second question—whether the District's law fails the appropriate level of scrutiny—follows readily from its answer to the first question. At the hearing on Plaintiffs' application for a preliminary and permanent injunction, the District argued that discovery and further briefing are necessary so that the District can supplement the record with additional social science research on public-carry laws. But that information is irrelevant. Because the District's law severely restricts the "core protection" of the Second Amendment, that law is *categorically* unconstitutional. *Heller*, 554 U.S. at 634–35. Indeed, through its proper reason requirement the District is asserting precisely the power that the Second Amendment denies it: "the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* at 634.

Furthermore, in *Heller*, once the historical analysis showed that armed self-defense was at the core of the Second Amendment right, the Court invalidated the District's ban on possession of firearms in the home. If the historical analysis alone was sufficient to invalidate the District's ban on the right of typical, law-abiding individuals to "keep . . . Arms" in their home for self-defense, it is also sufficient to invalidate the District's ban on the right of typical, law-abiding individuals to "bear Arms" outside the home for self-defense. *Heller* itself identified carry bans as among the "[f]ew laws in the history of our Nation that have come close to the severe restriction of the District's handgun ban." *Id.* at 629. As the D.C. Circuit held in *Heller II*, scrutiny analysis is appropriate only for laws "significantly less restrictive" than the District's handgun ban. 670 F.3d at 1267. The District's carry ban is thus categorically unconstitutional, and no social science evidence presented by the District could possibly change that result.

The D.C. Circuit's decision in *Heller III* is likewise dispositive of this case, on the record now before the Court. In that case, the D.C. Circuit struck down the District's prohibition on registering more than one pistol per month, flatly rejecting the District's argument that the law was justified because "the most effective method of limiting misuse of firearms . . . is to limit the number of firearms present in the home." *Heller v. District of Columbia ("Heller III")*, 801 F.3d. 264, 280 (D.C. Cir. 2015) (quotation marks omitted). The Court explained that this reasoning simply could not "justify restricting an individual's undoubted constitutional right to keep arms (plural) in his or her home, whether for self-defense or hunting or just collecting, because, *taken to its logical conclusion, that reasoning would justify a total ban on firearms kept in the home*." *Id.* (emphasis added). The Government offers the same invalid justification for the "proper reason" requirement at issue in this case. Specifically, the Government here has argued that "[i]f an increase in public carrying is likely to increase violent crime . . . *it is reasonable to conclude that a law limiting public carrying* to those with a special self-defense need will help prevent these harms." Defs.' Opp'n to Pls.' Appl. for a Prelim. and/or Permanent Inj. at 36 (Jan. 15, 2016), Doc. 20 (" PI Opp.") (emphasis added). Further briefing cannot change the dispositive fact that *Heller III* compels invalidation of the District's rationing of the right to carry.

2. Even if the Court is inclined to apply either strict or intermediate scrutiny, the District's ban is plainly unconstitutional and further briefing and discovery are unnecessary. Under strict scrutiny—the only type of scrutiny even arguably consistent with *Heller* and *McDonald*—the Government must establish that the ban is the least restrictive means of achieving a compelling governmental interest. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014). And under intermediate scrutiny, the Government must establish that the ban is

"substantially related to the achievement" of the government's objective. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Thus, to carry its burden under any heightened standard of review, the Government must be able to demonstrate that the District's restrictions on carrying firearms "will in fact" advance public safety "in a direct and material way." *Turner Broad. Sys., Inc. v. FCC ("Turner I")*, 512 U.S. 622, 664 (1994) (controlling opinion of Kennedy, J.). Not only have the parties and their amici already exhaustively briefed that very question, but the District has *conceded* that it cannot make the requisite showing. In its opposition to Plaintiffs' application for a preliminary and permanent injunction, the District conceded that "it is not possible to determine that there is a casual link between the passage of right-to-carry laws and crime rates." PI Opp. 30 (quoting Abhay Aneja, John J. Donohue III, & Alexandria Zhang, *The Impact of Right to Carry Laws and the NRC Report* 80 (Sept. 4, 2014) (unpublished manuscript)). That is the end of this case, for if the District concedes that it cannot establish a causal relationship between its public carry laws and public safety, it plainly cannot establish that its ban will directly advance its proffered interest in public safety.

Even if the District could somehow establish that its restrictive carry laws would advance public safety, the law fails intermediate scrutiny's narrow tailoring requirement. While intermediate scrutiny does not require the government to adopt the least restrictive alternative that will advance its interests, "the government must demonstrate that alternative measures that burden substantially less [protected conduct] would fail to achieve the government's interests." *McCullen*, 134 S. Ct. at 2540. But the District's ban is vastly overinclusive. Indeed, Chief Lanier essentially conceded this point when she stated, after this Court struck down the District's prior ban on carry in *Palmer*, that "[l]aw-abiding citizens that register firearms, that follow the rules,

are not our worry." Mike DeBonis, *Security, Not Street Crime, at Risk After Gun Ruling, D.C.
Police Chief Cathy Lanier Says*, WASH. POST, https://goo.gl/wPYekP. *Wrenn* emphasized the
District's failure to tailor the law at issue here as well: "Simply put, the District of Columbia's
'good reason'/'proper reason' requirement will neither make it less likely that those who meet
this requirement will present a risk to other members of the public or commit violent crimes than
those who cannot meet this requirement." 107 F. Supp. 3d at 11. The Court thus concluded that
the District had "failed to demonstrate that there is *any* relationship, let alone a tight fit, between
reducing the risk to other member of the public and/or violent crime and the District of
Columbia's 'good reason'/'proper reason' requirement." *Id*. at 11 (emphasis added).

At oral argument, the District argued that discovery is required by the D.C. Circuit's
decision in *Heller II* and the Supreme Court's decision in *Turner I*. Transcript 58. But the
decisions to remand in those cases turned on the specific records that were developed in those
cases. For example, in *Heller II*, the D.C. Circuit remanded for further proceedings only with
respect to a subset of the challenged laws, i.e. certain "novel registration requirements" and all
the registration requirements as applied to long guns. *Heller II*, 670 F.3d at 1258. But the Court
emphasized that the District had "fail[ed] to present *any data or other evidence* to substantiate its
claim" that the registration requirements would promote the Government's proffered interests,
and the parties' presentations similarly failed to present "*any evidence at all* concerning
application of the registration requirements to long guns." *Id.* at 1259 (emphasis added). *Turner*
likewise turned on a case-specific judgment that, "[o]n the state of the record developed thus
far," the Court was unable to evaluate the challenged law under intermediate scrutiny. *Turner I*,
512 U.S. 622 at 665. As discussed above—and as the District agreed at oral argument—there is
"more than enough evidence" in the record to decide this case. Transcript 58.

**C.** *Heller* **Itself, Among Other Decisions, Establishes that Further Proceedings Are Unnecessary.**

This Court decided the seminal *Heller* case at the district court level, and it did so without conducting discovery and by granting the defendants' motion to dismiss, which was fully briefed by the parties within a mere *120 days* of the date plaintiffs filed their complaint.[1] Before the Supreme Court, neither the majority nor the dissenting Justices suggested that the case should have been remanded for the development of a more complete record after a period of discovery. All agreed that the Court could decide the case as it was presented—including Justice Breyer, who conducted an elaborate "interest-balancing inquiry" akin to intermediate scrutiny, *Heller*, 554 U.S. at 689, which included an extended inquiry into the social science evidence before the Council of the District of Columbia, *id.* at 693–96, and a broader set of social science data that had been presented to the Court, *id.* at 696–705. If the Supreme Court could rule on the merits for the *plaintiff* in *Heller* on appeal from an order granting a *motion to dismiss* on the pleadings, the robust record that has been developed in this case plainly is sufficient for the entry of final judgment by this Court and any subsequent appellate review.

The Seventh Circuit's recent decision in *Moore* further demonstrates that it is appropriate for this Court to enter final judgment now. In that case, two district courts granted the defendants' motions to dismiss. *See Shepard v. Madigan*, 863 F. Supp. 2d 774, 785 (S.D. Ill. 2012); *Moore v. Madigan*, 842 F. Supp. 2d 1092, 1111 (C.D. Ill. 2012). The Seventh Circuit reversed and remanded for entry of judgment for the plaintiffs. *Moore*, 702 F.3d at 942. Judge

---

[1] *See Parker v. District of Columbia*, No. 03-213 (D.D.C.). The complaint was filed on February 10, 2003 (Doc. 1). The District filed a motion to dismiss on March 3, 2003 (Doc. 2), the plaintiffs filed a motion for summary judgment on March 14, 2003 (Doc. 4), and both parties' response and reply briefs were filed by June 10, 2003 (Docs. 3, 11, 13). The parties later conducted additional briefing, including with respect to certain amicus briefs that were subsequently filed.

Posner explained for the Court that although the usual consequence of reversing an erroneous dismissal under Rule 12(b)(6) "is to remand the case for evidentiary proceedings preparatory to the filing of motions for summary judgment" and possible trial on the merits, "there are no evidentiary issues in these two cases." *Id.* at 942. The Seventh Circuit in *Moore*, like the Supreme Court in *Heller*, recognized that "[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial." *Id.* Judge Posner further explained that to the extent any "facts" were in dispute, they were "legislative facts"— "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of parties in a particular case ('adjudicative facts')." *Id.* "The key legislative facts" in that case were the effects of Illinois's carry ban, and Judge Posner's review of the social science evidence demonstrated that there was no "more than merely a rational basis for believing" that those effects would be positive. *Id.*

This case is on all-fours with *Moore*. It simply does not turn on any adjudicative facts or evidentiary issues specific to this case. Again, there are only two categories of evidence that may be relevant to the Court: (1) the history of the Second Amendment, such as the practice at the time of the Founding, and, arguably if some form of scrutiny applies, (2) social science data about the effects of carry laws on public safety. These are legislative facts that do not require discovery, an evidentiary hearing, or a trial by jury.

The proceedings in *Palmer*, where this Court struck down the District's earlier ban on the right to bear arms in public, further confirm that discovery or additional briefing is unnecessary. In that case, the District filed a motion for summary judgment *a mere 34 days after the plaintiffs filed their complaint* and without any discovery whatsoever. *See* Defendants' Motion for Summary Judgment, *Palmer v. District of Columbia*, Doc. 6 (No. 09-1482). The District's

summary judgment brief, which also served as the District's opposition to Plaintiffs' motion for summary judgment,[2] was only 33 pages long (25 percent shorter than the District's opposition brief in this case), despite the fact that it concerned not one but two laws (the District's prohibition on the right to carry arms in public *and* its prohibition on the registration of firearms by individuals who live outside the District). And yet the District never argued that discovery or additional briefing were required for this Court to decide that case. The District's representations in *Palmer* defeat its present plea for discovery and additional briefing.

The District represented at oral argument that cases applying intermediate scrutiny routinely require extensive discovery and factual development—and that district courts are routinely reversed for failing to develop a sufficiently fulsome evidentiary record. Whether that is true as a general matter, it is plainly *not* true of the Second-Amendment cases most similar to this one. Discovery played no role in the Ninth Circuit's panel decision in *Peruta*, which categorically struck down a San Diego policy similar to the District's on the basis of *Heller*'s text and history approach. *See Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted* 781 F.3d 1106 (9th Cir. 2015). And the three Circuits that erroneously applied intermediate scrutiny to uphold laws similar to the District's reached their decisions apparently without any discovery before the district court, or at least without any discovery that played any role in the decisions of the district and appellate courts in those cases.

In sum, there is no reason why this court should prolong these proceedings before finally ending the ongoing, irreparable injury the District is inflicting upon its citizens.

---

[2] *See* Notice, *Palmer v. District of Columbia*, Doc. 7 (No. 09-1482).

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to consolidate the preliminary injunction proceedings with the merits. No further proceedings are necessary to conclude that the District's proper reason requirement violates the Second Amendment.


Dated:  February 16, 2016          Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070)
David H. Thompson (Bar No. 450503)
Peter A. Patterson (Bar No. 998668)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Attorneys for Plaintiffs*

18