## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW GRACE, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      Defendants. | Civ. Action No. 15-2234 (RJL) |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION TO CONSOLIDATE THE PRELIMINARY INJUNCTION
## PROCEEDINGS WITH THE DETERMINATION ON THE MERITS

## INTRODUCTION

Plaintiffs argue that the Court should consolidate the preliminary injunction proceedings with the merits because there is no relevant evidence that the District will be able to adduce in discovery. Plaintiffs are wrong, and the approach they urge runs contrary to recent precedent of the D.C. Circuit, which has made clear the importance of a fully developed evidentiary record in a Second Amendment case such as this. Plaintiffs also attempt to draw a material distinction between "adjudicative facts" and "legislative facts" that simply does not exist in case law, and misstate the District's evidentiary burden, assuming the Court finds that the "good reason" requirement impinges on conduct protected by the Second Amendment.

To be clear, the District believes there is adequate evidence in the current record to support judgment *for the District* or, at a minimum, denial of plaintiffs' request for emergency injunctive relief. But if the Court disagrees, pursuant to

binding precedent, it should allow the District the opportunity to develop more fully the record in support of the challenged legislation.[1]

## ARGUMENT

### THE COURT SHOULD NOT CONSOLIDATE THE PRELIMINARY INJUNCTION PROCEEDINGS WITH THE MERITS.

"[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (unanimous) (citations omitted); *see also NRDC v. Peña*, 147 F.3d 1012, 1023 (D.C. Cir. 1998) (requiring the parties to "fully make their case at the preliminary injunction hearing" is "a practice at odds with both the Federal Rules of Civil Procedure and the provisional nature of preliminary injunctive relief") (citation omitted); *Gordon v. Holder*, 721 F.3d 638, 644 (D.C. Cir. 2013) ("We must refrain from resolving novel and difficult constitutional questions [on appeal from a preliminary injunction], leaving them to be settled at a later stage, with the benefit of further factual and legal development."). This is because the issues considered at a preliminary injunction hearing "are entirely different from the focus of a summary judgment adjudication" and because it is a "'risky approach' to assume that the often incomplete evidence adduced at a preliminary injunction hearing is sufficient to determine whether a claimant is entitled to

---

[1]     On February 11, 2016, the District filed a Notice of Related Case, referencing *Wrenn v. District of Columbia*, No. 15-00162 (CKK), and filed a similar Notice in *Wrenn*, referencing the instant matter. By Minute Order of February 12, 2016, Judge Kollar-Kotelly determined not to consolidate plaintiffs' motion for preliminary injunction with the briefing on the merits. *See Wrenn* Docket (Feb. 12, 2016).

judgment as a matter of law." *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 177 (5th Cir. 1988) (citing *Commc'ns. Maint., Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir. 1985)).

Similarly, "[w]hen a party moves for pre-discovery summary judgment, it 'bears the heavy burden of establishing that the merits of the case are so clear that expedited action is justified.'" *Kemp v. Eiland*, No. 14-cv-1572 (TSC), 2015 WL 5826873, at *4 (D.D.C. Sept. 30, 2015) (quoting *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987)); *see also Thompson v. Fathom Creative, Inc.*, 626 F.Supp.2d 48, 53 (D.D.C. 2009) ("Pre-discovery summary judgment motions are usually premature and hence disfavored.") (quoting *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009)). *Cf. Tax Analysts v. IRS*, 214 F.3d 179, 186 (D.C. Cir. 2000) (pre-discovery judgment on the pleadings was "inappropriate" in light of lack of discovery); *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (denying in part motion for judgment on pleadings, allowing discovery to proceed; because a pre-discovery motion for judgment "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," a court must examine such motions "with the greatest of care") (citation omitted). Plaintiffs have not met their heavy burden.[2]

---

[2]     Parties seeking additional time for discovery in the face of a motion for judgment typically file a motion under Rule 56(d) (before 2010, Rule 56(f)) and an accompanying affidavit. Such motions "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)). Those affidavits must state with "sufficient particularity" why discovery (or additional discovery) is

As plaintiffs recognize, consolidating preliminary injunction proceedings with the trial on the merits could be appropriate only when "the relevant facts are undisputed, exigent circumstances exist, and granting preliminary relief will effectively give a party all of the relief it would obtain after trial on the merits." P.Mem. at 4 (quoting *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 63 (D.D.C. 2014)). But here there are a number of disputed facts, and plaintiffs have not shown any "exigent" circumstances warranting consolidation—indeed, plaintiffs waited nearly six months after the D.C. Circuit stayed Judge Scullin's injunction preliminarily invalidating the "good reason" requirement to file their own request for emergency injunctive relief. *See Wrenn v. District of Columbia*, No. 15-7057 (D.C. Cir.), Order Granting Mot. to Stay Injunction (June 29, 2015).

## I. Recent D.C. Circuit Precedent Makes Clear the Importance of A Full Evidentiary Record in Second Amendment Cases.

Plaintiffs argue that consolidation is appropriate because there is no relevant evidence that can be adduced in discovery. *See* P.Mem. at 6, 7, 9. They are wrong. Both the Supreme Court and D.C. Circuit have recognized the need for a full evidentiary record in order to properly scrutinize the type of legislative policy judgments and predictions that are challenged here. And there is simply no support for their assertion that "both parties have already developed a complete record in this case." P.Mem. at 9.

---

necessary. *Id.* (quoting *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008)). Consequently, the District attaches a declaration from counsel, explaining why it needs discovery here. *See* Declaration of Andrew J. Saindon (Mar. 4, 2016) (copy attached).

In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*), the D.C. Circuit upheld the "basic" firearms-registration requirement because it did not burden any Second Amendment right, but remanded the challenges to the "novel requirements" (and all the requirements as applied to long guns), because "the record [wa]s inadequate for [the Court] confidently to hold the registration requirements are narrowly tailored." *Id.* at 1258. The Court found that, in order to demonstrate the constitutionality of these requirements, the District had to "explain in greater detail how [its] governmental interests are served by" them. *Id.* at 1258 n.*. And due to "'the importance of the issues' at stake," the D.C. Circuit followed the approach of the Supreme Court in *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994) (*Turner I*)[3] and remanded to afford the parties "an opportunity 'to develop a more thorough factual record." *Id.* at 1259–60 (quoting *Turner I*, 512 U.S. at 664–68 (controlling opinion of Kennedy, J.)). Significantly, the court remanded the case for further development even though this Court had entered final judgment.[4]

---

[3]     The *Turner* cases involved a First Amendment challenge to cable-television regulation. The Supreme Court determined that it could not decide the significant questions presented on the then-existing record. Owing in part to the fact that "the standard for summary judgment is high, and no less so when First Amendment values are at stake and the issue is of far-reaching importance[,]" *Turner I*, 512 U.S. at 669 (Blackmun, J., concurring), the case was remanded—after final judgment—for further factual development.

[4]     The Circuit in *Heller II* also found that *plaintiffs* had failed in their evidentiary presentation. 670 F.3d at 1259. Notwithstanding this, if, as the instant plaintiffs argue, no discovery is necessary here, P.Mem. at 5, and they waive their right to conduct any, the discovery sought by the District could likely be concluded faster than the six months it has proposed.

After remand in *Heller II*, the parties conferred and agreed on a period of six months for discovery, which included written discovery and testimony from experts. Saindon Decl. ¶ 6. The District retained three law-enforcement experts and an academic expert.[5] *Id.* The plaintiffs retained their own academic expert. *Id.*; *see also Heller v. District of Columbia*, 45 F.Supp.3d, 35 40–42 (D.D.C. 2014). Both the trial court and the D.C. Circuit relied extensively upon this expert testimony, as well as other evidence developed during discovery, in deciding the permissibility of the various registration requirements at issue. *See id.* at 40 (noting that "[t]his Opinion cites extensively" to the conclusions of the parties' experts); *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*) (noting expert declarations among the "substantial evidence" the District had presented to support certain of its firearm registration requirements).

Here, plaintiffs allege that the District's "good reason" requirement violates the Second Amendment, and the District asserts that the requirement must be

---

[5]     During discovery in *Heller*, plaintiffs moved to strike the testimony of three of the District's experts, alleging that the opinions were the product of an unreliable methodology. *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013). Judge Boasberg rejected the arguments, finding that each of the experts was "a distinguished law enforcement official with a long history of specialized experience in a particular area opining on issues within that particular area" and that the methodology used to generate those opinions, *i.e.*, "professional judgment obtained through long experience in the field[,]" was "precisely contemplated" by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702. *Id.* at 142. The Circuit agreed. *Heller III*, 801 F.3d at 272 ("In light of the challenged experts' substantial relevant experience and the sources they cited in support of their conclusions—the above-noted stories, studies, and research—we hold the district court did not abuse its discretion in admitting the challenged expert reports and the subsequent expert declarations.").

analyzed under "intermediate scrutiny."[6] But, as recognized in *Heller II* and *Turner I*, the intermediate scrutiny analysis necessarily goes beyond the text of the law and the Constitution, and requires discovery into the "legislative facts"—existing and to-be-developed—that can (and will) show a substantial relationship between the "good reason" requirement and the District's interest in public safety. In other words, the District should be allowed sufficient time for discovery to develop and present its evidence, which will show that the "good reason" requirement can reasonably be expected to promote those safety interests. Indeed, in a recently filed opinion concurring with the D.C. Circuit's decision to deny *en banc* review in *Heller III*, Judge Millett wrote separately to emphasize the District's burden to "come forward with summary-judgment-qualifying evidence to substantiate the difficult policy judgments" related to its firearms registration laws. *See* Order, *Heller v. District of Columbia*, No. 14-7071 (D.C. Cir. Feb. 26, 2016) (Millett, J., concurring). In light of this burden, the District will be prejudiced if the Court were to consolidate the preliminary injunction proceedings with the merits of the case because it has not yet had the opportunity to develop the record through discovery. Saindon Decl. ¶¶ 12–16. *See Morris*, 38 F. Supp. 3d at 63 (noting that

---

[6]     Plaintiffs' continued insistence that strict scrutiny must be applied here, *see* P.Mem. at 12, is simply wrong. The Supreme Court did not require it in *Heller I* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), involving categorical bans on handguns in the home, and this Court should not apply it here to a carefully calibrated regulatory scheme with no impact at all on the "core" right of self-defense in the home described in those cases.

consolidation is appropriate "provided that doing so does not result in prejudice to either party") (citations omitted).

Plaintiffs also argue that the additional evidence the District may present here cannot justify the "good reason" standard because *Heller I* and *McDonald* are "dispositive" on the question. P.Mem. at 10. This is wrong as a matter of law. The Supreme Court has never addressed the scope of the rights protected by the Second Amendment outside the home, *i.e.*, public carry. Both *Heller I* and *McDonald* were decided before *Heller II*. If either of those cases had definitively decided the permissible scope of the public carrying of firearms, surely there would be more indication than the scattered *dicta* referenced by plaintiffs. *Cf. Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) ("[I]t is clear that prohibition of firearms in the home was the gravamen of the certiorari questions in both *Heller* and *McDonald* and their answers. If the Supreme Court, in this dicta, meant its holding to extend beyond home possession, it will need to say so more plainly."). And the courts of appeals would have recognized as much, whereas in fact the circuits have uniformly upheld laws indistinguishable from the law challenged here. *See Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 101 (2d Cir. 2012). Thus, as the Seventh Circuit acknowledged in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), "the Supreme Court has not yet addressed the question." Id. at 935.

At bottom, the District believes that the current record has sufficient evidence to support judgment for it or, in the alternative, for denial of plaintiffs'

motion for emergency injunctive relief. *Cf. Turner II*, 520 U.S. at 196 ("[C]omplete factual support in the record for the [agency's] judgment or prediction is not possible or required ....") (quoting *FCC v. National Citizens Comm. for Broad.*, 436 U.S. 775, 814 (1978)).[7] But should the Court determine that the present record is insufficient to uphold the "good reason" requirement, it should deny plaintiffs' motion and permit the District a full and fair opportunity to make an evidentiary record in support of the challenged legislation. *See* Saindon Decl. ¶¶ 12–16.

## II.   The Difference Between Legislative Facts and Adjudicative Facts Does Not Speak to the Need to Allow Full Development of the Record.

Plaintiffs argue that the case should proceed immediately to judgment due to "[t]he distinction between legislative facts and adjudicative facts." P.Mem. at 7. That is incorrect. Whether the facts at issue are legislative or adjudicative, the Court should allow the parties appropriate time to develop them.

The Supreme Court's decisions in the *Turner* cases instruct, contrary to plaintiffs' implicit arguments here, that intermediate scrutiny can be satisfied with evidence not before the legislature at the time of enactment. *See Turner Broad. Sys.*

---

[7]     The Court should defer to the Council's conclusions regarding the need for—and effectiveness of—the "good reason" requirement. *See, e.g., Gonzalez v. Carhart*, 550 U.S. 124, 163 (2007) ("The Court has given state and federal legislatures wide discretion to pass legislation in areas where there is medical and scientific uncertainty." (citing cases); *Baze v. Rees*, 553 U.S. 35, 90 (2008) (Scalia, J., concurring) ("It is simply not our place to choose one set of responsible empirical studies over another in interpreting the Constitution. Nor is it our place to demand that state legislatures support their criminal sanctions with foolproof empirical studies, rather than commonsense predictions about human behavior."). *See also, e.g., Woollard*, 712 F.3d at 881 ("[I]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.") (quoting *Kachalsky*, 701 F.3d at 89).

*v. FCC*, 910 F. Supp. 734, 751 (D.D.C. 1995) ("Additional evidence produced during the remand proceedings confirms Congress' judgments.") (footnote omitted). In *Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994) (*Turner I*), the Supreme Court held that the government's defense of its laws should not be limited to the evidence relied on by the legislature, explaining that "Congress is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review." *Id.* at 666. Finding the record insufficient to uphold the law, it remanded the case to the district court "to permit the parties to develop a more thorough factual record, and to allow the District Court to resolve any factual disputes remaining." *Id.* at 668. On remand, the parties generated "tens of thousands of pages" of additional evidence, comprising, among other things, information acquired by Congress during hearings about the challenged legislation, additional expert declarations and testimony, documents from the regulated industry, and other "studies and anecdotal evidence ...." *Turner II*, 520 U.S. at 187 (citing *Turner Broad. Sys. v. FCC*, 910 F. Supp. 734, 742–55 (D.D.C. 1995)).

The same factual development would be necessary even if this Court was to apply strict scrutiny. In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the Supreme Court applied strict scrutiny to a law banning the provision of material support to foreign terrorist organizations, even when that support took the form of pure speech designed to benefit the organizations' humanitarian purposes. *Id.* at 28. It nevertheless upheld the law, relying not only on the legislative record, but on a

detailed affidavit from a State Department expert. *Id.* at 29–33, 38. Even under strict scrutiny, the District should be permitted to put on evidence supporting the compelling government interest the "good reason" standard promotes, as well as the necessity of the "good reason" standard to promote that interest. *Id.*

Plaintiffs incorrectly suggest that the Court need only take judicial notice of the historical and social-science materials cited in the parties' briefs here and in other cases. *See* P.Mem. at 8. "As a general matter, judicial notice is available only for 'adjudicative facts,' or the 'facts of a particular case,' as opposed to 'legislative facts[.]'" *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) (quoting Fed. R. Evid. 201) (Legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.")). "Thus, judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Id.*

Plaintiffs' suggested approach would cut the Court off from future evidence that would be directly relevant to the necessary analysis, and that would be developed specifically for this case and the "good reason" standard in the disputed law. Plaintiffs argue that it would be sufficient to decide these important, first-impression, constitutional questions on the basis of "similar" social-science research and history. Not so. The Court should allow discovery to proceed here.

Plaintiffs also argue that this case is "on all fours" with *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), and because there was no discovery there, there should

be none here. P.Mem. at 15. Here, too, plaintiffs are wrong. *Moore* resolved a challenge to Illinois' categorical ban on carrying firearms in public. Consequently, it more closely resembles *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), which invalidated the District's ban on carrying firearms in public. In contrast to the laws at issue in *Moore* and *Palmer*, the "good reason" standard is not a categorical ban.[8] Thus, if the Court determines that that standard is subject to means-ends scrutiny because it impinges on conduct protected by the Second Amendment, the District should be permitted to put forth evidence supporting the legislative policies and predictions of the D.C. Council. *See Heller II*, 670 F.3d at 1252-53; *Heller*, No. 14-7071 (D.C. Cir. Feb. 26, 2016) (Millett, J., concurring).

## III.  The District Has Not Conceded that It Cannot Meet Its Evidentiary Burden.

Finally, plaintiffs argue that because the District cannot establish a "causal relationship" between "good reason" public carry laws and public safety, the

---

[8]     Plaintiffs also fail to note that the Seventh Circuit in *Moore* did *not* order Illinois to enact a "shall issue" regime, as plaintiffs essentially ask the Court to do here. Rather, it stayed its ruling and gave the State 180 days "to craft a new gun law that will impose reasonable limitations, consistent with public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public." 702 F.3d at 942. The Seventh Circuit left the *details* of that scheme to be worked out by the people's elected representatives. The Seventh Circuit later extended that period for an additional 30 days at Illinois' request. *See Shepard v. Madigan*, 734 F.3d 748, 749 (7th Cir. 2013). The Illinois legislature subsequently enacted a "shall issue" regime (over a gubernatorial veto). *Id.* at 750. The plaintiffs there urged the court to order that anyone who already had a registered gun at home be allowed to carry it in public, pending any new legislation. *Id.* The Seventh Circuit rejected that argument, determining that that relief was "unreasonable." *Id.* The Seventh Circuit expressly noted that "[O]ur mandate did not forbid the state to impose *greater restrictions on carrying a gun outside the home* than existing Illinois law … imposes on possessing a gun in the home." *Id.* at 751 (emphasis added). The instant case manifestly is not parallel to *Moore*.

challenged law fails "any heightened standard of review[.]" P.Mem. at 13. They assert that "the District has *conceded* that it cannot make the requisite showing[,]" P.Mem. at 13 (emphasis in original), because it quoted a statement from a leading study on the issue that "it is not possible to determine that there is a causal link between the passage of right-to-carry laws and crime rates." Doc. No. 19 (quoting DA 212).[9] But that study explained that while causation could not be proven "with the level of certainty one strives for in academic work," conclusions *could* be made "at some lower level of certainty such as 'more probable than not.'" DA 212. And scientific or empirical certainty—the type required to "prove" causation in academic work—is not the test under means-ends scrutiny. Indeed, under intermediate scrutiny, the District need only show *some* meaningful evidence that the challenged firearm law can reasonably be expected to promote an important government interest, and that the challenged regulation is not substantially more burdensome than necessary to do so. *Heller II*, 670 F.3d at 1259; *see also Heller III*, 801 F.3d at 276 (law will survive intermediate scrutiny if it "will materially further an important governmental interest.") (citing *Barry v. City of New York*, 712 F.2d 1554, 1559–61 (2d Cir. 1983)); *cf. Humanitarian Law Project*, 561 U.S. at 33–34 (holding

---

[9]     Moreover, plaintiffs state that the parties have already "exhaustively briefed" the question of whether restrictions on the public carrying of firearms will advance public safety. P.Mem. at 13. This is incorrect; the parties have briefed the issue to the extent allowed in an appeal from a preliminary injunction in *Wrenn*, but no evidentiary record was developed there, nor is there any judicial decision on the merits of that issue (because Judge Scullin's decision was vacated). *Heller II* and *Heller III* were about the District's firearms-registration requirements, not about the fundamentally different public-carry regime at issue here. And those cases acknowledged the crucial role that subsequently developed evidence can play.

that, even under strict scrutiny, "[i]t is vital . . . 'not to substitute . . . our own evaluation of evidence for a reasonable evaluation by the Legislative Branch"). As the leading study explained, "[s]ince policymakers need to act, it is more useful to offer guidance as to which evidence is likely to be most reliable than to simply reject all evidence until the highest level of certainty has been attained." DA 212.

Additionally, plaintiffs' statement ignores the sentences immediately following the alleged "concession" by the District, which explain the difference between strict empirical/scientific certainty, and that necessary for establishing policy. *See id*. That evidence shows that shall-issue laws may increase crime and threaten public safety. That is all the certainty required here for the Court to uphold "good reason."

The District is not required to demonstrate with precise precognitive certainty that its law will benefit public safety in the least restrictive way; rather, the relevant inquiry is whether the Council could reasonably believe, based on substantial evidence, that the "good reason" requirement will assist in reducing the likelihood of gun crime and violence and contribute to public safety. To expect the laws to be perfect would be illogical and impractical, where a legislature must protect citizens based on its view of the best available information rather than wait for absolute scientific consensus. And that approach is certainly not required by the Constitution: the courts' "sole obligation" in reviewing a legislature's "predictive judgments" is "to ensure that, in formulating its judgments," the legislature "has drawn reasonable inferences based on substantial evidence." *Turner II*, 520 U.S. at

195 (internal quotation marks omitted). The District should be given the opportunity to develop the evidentiary record in order to demonstrate that the D.C. Council has done so in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to consolidate the preliminary injunction proceedings with the determination on the merits.

DATE: March 4, 2016.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Deputy Attorney General
Public Interest Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON (#453765)
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J. SAINDON (#456987)
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
Email: andy.saindon@dc.gov

/s/ Chad A. Naso
CHAD A. NASO (#1001694)
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-7854
Facsimile: (202) 741-8951
Email: chad.naso@dc.gov

/s/ Holly M. Johnson
HOLLY M. JOHNSON (#476331)
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW,
Suite 600S
Washington, D.C. 20001
(202) 442-9890
holly.johnson@dc.gov

*Counsel for the District of Columbia*