# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW GRACE and )
PINK PISTOLS, )
          )
           Plaintiffs, )
          ) Civil Action No. 15-2234 (RJL)
     v. )
          )
DISTRICT OF COLUMBIA and )
CATHY LANIER, in her official capacity as )
Chief of Police for the Metropolitan Police )
Department, )
          )
           Defendants. )

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE THE PRELIMINARY INJUNCTION PROCEEDINGS WITH THE DETERMINATION ON THE MERITS

Charles J. Cooper (Bar No. 248070)
David H. Thompson (Bar No. 450503)
Peter A. Patterson (Bar No. 998668)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Attorneys for Plaintiffs*

March 14, 2016

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

A.      This case turns on text and history, and the District concedes that
        it does not need discovery to develop its historical argument ............................................ 2

B.      Even if social science evidence is relevant, discovery is unwarranted .............................. 5

        1.      The District's boilerplate discovery request is irrelevant as a matter of law ........... 6

        2.      The parties have fully developed the District's proposed topics for discovery ..... 10

        3.      *Heller II* and *Turner I* do not establish that the District is entitled to discovery ... 13

        4.      The Court may rely upon the legislative facts discussed in the parties' briefs ...... 15

C.      The recent decision in *Wrenn* does not affect the analysis. ............................................. 17

CONCLUSION ......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Association of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151 (D.C. Cir. 1979)............................15

*Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729 (2011)............................................11, 12

*City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) ............................................................9

*Convertino v. Department of Justice*, 684 F.3d 93 (D.C. Cir. 2012)........................................10, 11

*Daggett v. Commission on Governmental Ethics & Election Practices*,
    172 F.3d 104 (1st Cir. 1999)..................................................................................................15

\* *District of Columbia v. Heller*, 554 U.S. 570 (2008)........................................1, 2, 3, 4, 5, 7, 8, 13

\* *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011).............................3, 12, 13, 14, 15

\* *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015).............................................5, 6, 17

*Henry v. United States*, 361 U.S. 98 (1959)......................................................................................8

\* *McDonald v. City of Chicago*, 561 U.S. 742 (2010)..............................................1, 3, 4, 5, 7, 8, 12

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012)............................................................................13

*New York Times Co. v. United States*, 403 U.S. 713 (1971)..............................................................8

*Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) ............................................5, 6

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ....................................................12

*Stone v. Powell*, 428 U.S. 465 (1976)..............................................................................................8

*Toth v. Grand Truck R.R.*, 306 F.3d 335 (6th Cir. 2002).........................................................15, 16

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994).......................................................12, 14, 13

*Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997)....................................................................9

\* *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19 (D.C. Cir. 2014) .......10, 11

*United States v. Stevens*, 559 U.S. 460 (2010)................................................................................8

*United States v. Virginia*, 518 U.S. 515 (1996) ...............................................................................9

**Rules**

FED. R. EVID. 201 ......................................................................................................................15, 16

**Other**

21B KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE (2d ed. 2015) .....................16

Alexander Volokh, *n Guilty Men*, 146 U. PA. L. REV. 173 (1997)...................................................8

BRIAN A. REAVES, VIOLENT FELONS IN LARGE URBAN COUNTIES
    (U.S. Department of Justice, 2006), *available at* http://goo.gl/aGd46P ..................................8

Gary Kleck, Comments on *Aneja et al. (2014)* (Oct. 7, 2015) ......................................................13

**INTRODUCTION**

The District's response to Plaintiffs' motion to consolidate underscores why the Court should enter a permanent injunction without further proceedings. The District does not even argue that discovery and further briefing are necessary with respect to the historical scope of the Second Amendment right. The District claims instead that discovery is necessary so that it may further explore the social science literature on the link between firearms and public safety. But as Plaintiffs have already demonstrated at length, the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), make clear that the constitutionality of the District's ban does not turn on the opinion of social scientists. Rather, the constitutionality of the ban turns on the text and history of the Second Amendment, which leave no doubt that the right to bear arms encompasses the right of a typical law-abiding citizen to carry a handgun outside the home for the purpose of self-defense.

Even if social science literature were relevant to this case, the District has failed to establish that further proceedings are warranted. The District's proposed areas of discovery are irrelevant to the legal question before this Court, and they seek to draw a distinction between the scope of the Second Amendment in urban and rural areas that is forbidden by binding Supreme Court precedent. Most importantly, the District provides no analysis whatsoever, beyond seventy-seven conclusory words in a Declaration from its counsel, about why the new evidence it wishes to present is new and not simply redundant of the hundreds of pages of briefing and appendices the District and its amici have already presented in this and related cases.

Further proceedings will do nothing but further prolong the District's nullification of its citizens' Second Amendment rights. Plaintiffs respectfully request that the Court enter a permanent injunction now.

**A.** **This case turns on text and history, and the District concedes that it does not need discovery to develop its historical argument.**

The District acknowledges that final judgment is appropriate so long as the evidence "is sufficient to determine whether [the] claimant is entitled to judgment as a matter of law." Defs.' Opp'n to Pls.' Mot. to Consolidate the Prelim. Inj. Proceedings With the Determination on the Merits at 2–3 (Mar. 4, 2016), Doc. 41 ("D.C. Opp."). That standard is satisfied because this case turns on the text and history of the Second Amendment, and the District concedes that discovery and further briefing are unnecessary for this Court to decide the historical scope of that provision. The District's suggestion that it must pursue discovery into social science evidence supporting its theory that the costs of public handgun carriage outweigh the benefits is therefore entirely beside the point.

*Heller* struck down the District's handgun ban based on an extensive analysis of the text and history of the right to keep and bear arms, and without any analysis of social science research about firearms. 554 U.S. at 576–626. Although Justice Breyer argued at length in dissent that the ban was justified in light of (at best ambiguous) social science research on gun violence, *id.* at 693–705, the Supreme Court squarely rejected this " 'interest-balancing' approach," holding instead that "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon," *id.* at 634 (majority opinion). *Heller* holds that, at least when a regulation severely impinges upon the "core protection" of the Second Amendment, the regulation must be held categorically unconstitutional. *Id.* at 634–35. Because text and history alone were sufficient for the Court in *Heller* to invalidate the District's ban on the right of typical, law-abiding individuals to "keep" arms for self-defense, they are likewise

sufficient for this Court to invalidate the District's ban on the right of those same individuals to "bear" arms for self-defense.

*Heller*'s progeny confirm that the constitutionality of the District's carry ban turns on text and history, not social science. *McDonald* reaffirmed that *Heller* had deliberately and "expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing." 561 U.S. at 785 (plurality opinion). In *McDonald*, as in *Heller*, Justice Breyer argued in dissent that the constitutionality of Chicago's firearm ban should turn on "answers to complex empirically based questions," such as whether "the murder rate [would] have risen even faster" without the ban and whether the ban "simply [took] guns from those who use them for lawful purposes without affecting their possession by criminals." *Id.* at 922–23 (Breyer, J., dissenting). And in *McDonald*, as in *Heller*, the Supreme Court squarely rejected that empirical approach, holding instead that the Second Amendment does *not* "require judges to assess the costs and benefits of firearms restrictions" or "make difficult empirical judgments in an area in which they lack expertise." *Id.* at 790–91 (plurality opinion); *see also id.* at 812 (opinion of Thomas, J.). The D.C. Circuit has likewise recognized (as it must) that a levels of scrutiny inquiry is neither necessary nor appropriate when analyzing a law that "severely restrict[s]" the core Second Amendment right to self-defense. *Heller v. District of Columbia*, 670 F.3d 1244, 1266 (D.C. Cir. 2011) ("*Heller II*").

Because this case turns solely on text and history, the Court should grant Plaintiffs' motion to consolidate and enter final judgment without further proceedings. The parties have already thoroughly briefed whether the text and history of the Second Amendment prohibit the District from extinguishing the right to bear arms. Plaintiffs have demonstrated in numerous briefs why the historical record establishes that the Second Amendment guarantees the right of

typical, law-abiding citizens to bear arms in public for self-defense.[1] The District and its amici have had ample opportunity to respond with their own account of history, both in this case and in related cases.

Most importantly, the District has admitted that discovery and further briefing are *not necessary* for this Court to decide the historical scope of the Second Amendment right. The District attached to its opposition a Declaration from counsel "explaining why it needs discovery here." D.C. Opp. 3 n.2. That Declaration claims discovery is needed so that it may develop a record on the costs and benefits of concealed-carry laws—but it does *not* argue that discovery and additional briefing are necessary for the parties to further explore the historical scope of the Second Amendment right. *See* Rule 56(d) Decl. of Andrew Saindon ¶ 12 (Mar. 4, 2016), Doc. 41-1 ("Saindon Decl.").

The District's concession is dispositive. The District's request for discovery is relevant only if this Court decides that it must consider what *Heller* and *McDonald* hold it *may not* consider: the "costs and benefits of firearms restrictions." *McDonald*, 561 U.S. at 790–91 (plurality opinion). Because text and history are dispositive in reviewing a severely restrictive prohibition like the one at issue here, and because discovery and further briefing about the social science literature cannot possibly make a difference, the Court should proceed to final judgment. (Indeed, as Plaintiffs explained in their motion to consolidate, it is even unnecessary for the Court to conduct a *de novo* historical analysis of the scope of the Second Amendment, because

---

[1] *See* Mem. of Points & Authorities in Supp. of Pls.' Appl. For a Prelim. and/or Permanent Inj. at 9–26 (Dec. 28, 2015), Doc. 6–1; Reply Mem. in Supp. of Pls.' Appl. For a Prelim. and/or Permanent Inj. at 3–15 (Jan. 22, 2016), Doc. 23; Mem. of Points & Authorities in Supp. of Pls.' Mot. to Consolidate the Prelim. Inj. Proceedings with the Determination on the Merits at 9–11, 15 (Feb. 16, 2016), Doc. 37–1; Pls.' Suppl. Br. in Supp. of Their Appl. For a Prelim. and/or Permanent Inj. at 1–11 (Feb. 24, 2016), Doc. 40.

the analysis in *Heller* and *McDonald* alone are dispositive of this case. *See* Mot. to Consolidate

the Prelim. Inj. Proceedings with the Determination on the Merits at 10 (Feb. 16, 2016), Doc. 37

("Mot. to Consolidate").)

    **B.**  **Even if social science evidence is relevant, discovery is unwarranted.**

      The District's argument that this Court should forestall final judgment depends upon the

premise that intermediate scrutiny applies and that the District will suffer prejudice if it cannot

supply additional evidence about the costs and benefits of public carry laws. D.C. Opp. 7. For the

reasons just explained, the District's premise is wrong: there is no need to perform a levels-of-

scrutiny analysis in this case because the District's ban is categorically unconstitutional.

      Even if the District's premise were right (that intermediate scrutiny applies), its

conclusion still would be wrong because binding circuit precedent establishes that even under

intermediate scrutiny the District's carry law is unconstitutional as a matter of law. In *Heller v.*

*District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller III*"), the D.C. Circuit struck down

the District's prohibition on registering more than one pistol per registrant during any 30-day

period. *Id.* at 280. As here, the District argued that the ban promoted "public safety by limiting

the number of guns in circulation," but the D.C. Circuit rejected that more-guns, more-crime

syllogism as contrary to "an individual's undoubted constitutional right to keep arms (plural) in

his or her home." *Id.* "[T]aken to its logical conclusion," the D.C. Circuit recognized, "that

reasoning would justify a total ban on firearms kept in the home," and so it simply cannot be

right. *Id.* This holding mandates a ruling for Plaintiffs in this case, as the logical conclusion of

the District's more-guns, more-crime reasoning here would justify a total ban on firearms carried

outside the home, which this Court has already held to be unconstitutional. *See Palmer v. District*

*of Columbia*, 59 F. Supp. 3d 173, 183 (D.D.C. 2014). Under *Heller III*, social science evidence is irrelevant because the rationale for the District's law is an unconstitutional one.

Even if the District were correct that social science evidence is relevant to this case, discovery still would be unnecessary. To determine whether discovery is necessary, the Court must scrutinize whether "the District will be prejudiced if the Court were to consolidate the preliminary injunction proceedings with the merits of the case." D.C. Opp. 7. Yet, the District's brief never explains what new evidence the District will produce during discovery, nor does it identify why that evidence is relevant and not already before the Court. To prove that it needs discovery, the District instead relies entirely upon conclusory statements in Mr. Saindon's Declaration, which claims that discovery is necessary so that the District can develop a record about the following four topics:

a. the hazards and risks of allowing concealed weapons to be carried in cities and urban areas, as compared to more rural areas
b. the threats to public safety and the burdens faced by the police in enforcing concealed-carry laws in big cities
c. the unique difficulties in enforcing public-carry and gun laws generally in the District of Columbia as the Nation's capital [and]
d. the benefits and burdens of imposing a "good reason" or similar requirement on applicants for concealed-carry permits.

Saindon Decl. ¶ 12. The Court should reject the District's plea for discovery. First, the District's boilerplate request is irrelevant as a matter of law because it seeks evidence that does not bear on the dispositive legal question. And second, even if the request were relevant to the legal question before the Court, the District has failed to establish that it will produce any new evidence during discovery or that it will be prejudiced should the Court enter final judgment at this time.

1. The District's boilerplate discovery request is irrelevant as a matter of law.

The District's four proposed topics for discovery are irrelevant to the legal question before this Court. The first three topics are three different ways of saying the same thing, *i.e.*,

that there is a unique need to extinguish Second Amendment rights in urban areas in general and the Nation's capital in particular. But *Heller* and *McDonald* foreclose that argument. *Heller*, of course, struck down a firearm ban *in the District itself*, while *McDonald* involved a ban in the Nation's third-largest city. By invoking a distinction between urban and rural areas, the District echoes Justice Breyer's *Heller* dissent, which would have upheld the firearm ban because the law was "tailored to the urban crime problem" and "affects only a geographic area both limited in size and entirely urban . . . ." 554 U.S. at 682. Justice Breyer was following the District's lead, as the District's *Heller* briefs repeatedly invoked the District's entirely urban environment. *See* Br. for Petitioners at 5–6, 10, 49 (Jan. 4, 2008); Reply Br. for Petitioners at 19, 26, 28 (Mar. 5, 2008). The majority, of course, expressly rejected that distinction, holding that it is irrelevant that "the law is limited to an urban area" because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," and the Second Amendment includes a right to keep and bear arms in urban and rural areas alike. *Heller*, 554 U.S. at 634–35.

The District's fourth proposed topic for discovery—an exploration of the "benefits and burdens" of the District's law—likewise parrots Justice Breyer's *Heller* dissent and the District's briefing in *Heller*, and it is likewise irrelevant as a matter of law. In *Heller*, Justice Breyer would have upheld the District's handgun ban based on his assessment of whether the "benefit" of the law was "worth" the "cost" it imposed. *Id.* at 703. The District had extensively briefed these issues in *Heller*. *See* Br. for Petitioners 49–55. But the *Heller* majority expressly rejected any "interest-balancing inquiry" that weighed the benefits and burdens of the ban. 554 U.S. at 634 (majority opinion). *McDonald* similarly held that the Second Amendment does not allow judges to "assess the costs and benefits of firearms restrictions." 561 U.S. at 790–91 (plurality opinion). Even if it is "debatable" whether the costs of the Second Amendment outweigh the benefits,

"what is not debatable is that it is not the role of this Court to pronounce the Second Amendment extinct." *Heller*, 554 U.S. at 636.

The District's discovery request is based on the startling premise that it may deprive citizens of their constitutional rights whenever the "benefits" of doing so might outweigh the "burdens." But the enforcement of almost every constitutional right sometimes creates the possibility of endangering public safety. It is easy to imagine circumstances where enforcement of the First Amendment might present a risk to public safety, *see, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971), yet "[t]he First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits," *United States v. Stevens*, 559 U.S. 460, 470 (2010). The exclusionary rule "often frees the guilty," *Stone v. Powell*, 428 U.S. 465, 490 (1976), while the Fourth Amendment prohibition against unreasonable searches and seizures likewise ensures "that the guilty sometimes go free," *Henry v. United States*, 361 U.S. 98, 104 (1959). Indeed, *all* of the constitutional rights of criminal procedure—the rights to trial by jury, assistance of counsel, confrontation, compulsory process, and so on—raise the bar for obtaining a criminal conviction, reflecting the Constitution's judgment that it is better that some guilty persons should go free (and thus that public safety should suffer) than that we should live in a police state with absolute security but no liberty. *See generally* Alexander Volokh, *n Guilty Men*, 146 U. Pa. L. Rev. 173 (1997). One could no doubt produce evidence that each of these rights endangers public safety. For example, a government study found that one out of every four violent felons in large urban areas who were released on bail pending disposition of the case resulting in their conviction committed misconduct while in a release status. Brian A. Reaves, Violent Felons in Large Urban Counties 6 (U.S. Department of Justice, 2006), *available at* http://goo.gl/aGd46P. Does

that mean the District can invoke this data about crime rates in urban areas to impose excessive bail on its arrestees, despite the Constitution's prohibition against it? Of course not. And if that is unacceptable with respect to the First, Fourth, Fifth, Sixth, Seventh, and Eighth Amendments, why is it acceptable with respect to the Second? The Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." *McDonald*, 561 U.S. at 780 (plurality opinion). The founding generation knew full well the public safety implications of allowing citizens to bear arms for the purpose of self-defense, and it chose to codify the right in the Constitution regardless.

Finally, it is revealing that the District is still seeking discovery to find some defensible rationale for its carry law more than a year and a half after the Council enacted it. Indeed, the District argues that it must be allowed to present evidence "that would be developed specifically for this case," even if that evidence were not before the D.C. Council when it enacted the firearm ban. D.C. Opp. 11. To the extent the District wishes to invent a post-hoc rationale for the Council's decision to deprive typical, law-abiding citizens of their constitutional rights, the Supreme Court has repeatedly held that such a move would be inappropriate. For example, the Court made clear in *Turner II* that when heightened scrutiny applies, "the question is whether the legislative conclusion was reasonable and supported by substantial evidence in the record before [the legislative body]." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 211 (1997). The District's proffered "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996). *See also City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500–01 (1989).

2. <u>The parties have fully developed the District's proposed topics for discovery.</u>

Even if the District's four proposed topics for discovery were somehow relevant to the legal question before this Court, discovery is still unwarranted. That is because the District has failed to establish that it will produce any new information during discovery or that it will suffer prejudice if the Court were to enter final judgment at this time.

The District concedes that its declaration in support of discovery must state with "sufficient particularity" why discovery is necessary. D.C. Opp. 3 n.2 (quoting *Convertino v. Department of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)).[2] Plaintiffs agree that the standard for allowing further discovery under Rule 56(d) is a useful guide for determining whether discovery is warranted here, but the District does not come close to satisfying that standard.

First, the District's "request lack[s] the particularity required by *Convertino*" because its "vague request does not indicate why the [discovery] would reveal any information beyond what is" already in the record. *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 764 F.3d 19, 29 (D.C. Cir. 2014). The District has already presented ample evidence discussing the "benefits and burdens of imposing a 'good reason' " requirement for carry licenses, including in the specific context of urban environments and the Nation's capital. The District's opposition to Plaintiffs' application for a preliminary and/or permanent injunction contained numerous pages of analysis on this topic, *see* Defs.' Opp'n to Pls.' Appl. for Prelim. and/or Permanent Inj. at 17,

---

[2] The District quotes *Convertino*'s statement that motions under Rule 56(d) "should be granted almost as a matter of course." D.C. Opp. 3 n.2 (internal quotation marks omitted) (quoting *Convertino*, 684 F.3d at 99). Even assuming that Rule 56(d) applies—Plaintiffs' motion is brought under Rule 65(a)(2), not Rule 56—the D.C. Circuit has limited that statement to the situation where (unlike here) "the facts giving rise to the cause of action are in the sole possession of the moving party . . . ." *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 764 F.3d 19, 27 (D.C. Cir. 2014). Here, the District is not seeking to discover anything from Plaintiffs, but rather is merely seeking additional time to develop its own evidence to support a law that was first challenged in court over a year ago.

21–38 (Jan. 15, 2016), Doc. 19 ("PI Opp."), and it included a 329-page appendix comprised primarily of detailed reports and studies of gun violence, including a 132-page report by the D.C. Council, *see* Defs.' App. (Jan. 15, 2016), Doc. 19-1 ("DA"). One of the District's amici submitted an entire brief exhaustively reviewing the social science literature on gun violence. Br. of Amicus Curiae Brady Ctr. to Prevent Gun Violence in Supp. of Defs. (Jan. 22, 2016), Doc. 31. The District had an opportunity to provide additional social science research to the Court in its Supplemental Brief in Opposition to Plaintiffs' Application for a Preliminary Injunction (Feb. 24, 2016), Doc. 39.

The District does not explain how its new evidence would add anything new beyond the "more than enough evidence," Transcript of Prelim. Inj. Hearing at 58:18 (Feb. 2, 2016), Doc. 33 ("Tr."), already in the record. And the D.C. Circuit has made clear that "boilerplate discovery request[s]" like that offered by the District do not satisfy a party's burden to establish that discovery is necessary. *Folliard*, 764 F.3d at 29.

Second, the additional information that the District wishes to produce during discovery is "immaterial" and " 'would [not] create a triable issue.' " *Id.* at 28 (quoting *Convertino*, 684 F.3d at 99). That is so because, as discussed *supra*, the District's four proposed areas of discovery are irrelevant to the legal question before the Court. But it is equally so because the District itself claims that "it is not possible to determine that there is a causal link between the passage of right-to-carry laws and crime rates." PI Opp. at 30. If the District's law is not *categorically* unconstitutional, it is subject to strict scrutiny. And the Supreme Court has already held that a law fails strict scrutiny when the government that enacted the law "acknowledges that it cannot show a direct causal link between [the thing being regulated] and harm to [the public]." *Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011). In *Brown*, the Court struck down

California's restriction on the sale or rental of violent video games to minors because California's studies linking video games to violence "do not prove that violent video games *cause* minors to *act* aggressively," but instead "show at best some correlation between" exposure to violent entertainment and harm to minors. *Id.* at 2739 (emphasis in original). Just as California's concession that "it cannot show a direct causal link" was fatal in *Brown*, the District's concession that "it is not possible to [show] a causal link," PI Opp. at 30, is fatal here.

The District responds that "under intermediate scrutiny, [it] need only show *some* meaningful evidence that the challenged firearm law can reasonably be expected to promote an important government interest," D.C. Opp. 13 (emphasis in original), but the District's attempt to lower its burden fails because strict scrutiny applies. Strict scrutiny is "requir[ed]" whenever a law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution," *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973), and the right to bear arms is specifically enumerated in the Constitution and counts "among those fundamental rights necessary to our system of ordered liberty," *McDonald*, 561 U.S. at 778. Thus, laws that significantly burden the core Second Amendment right of self-defense must at a minimum be subject to strict scrutiny. Indeed, under D.C. Circuit precedent, intermediate scrutiny is appropriate only when a law *does not* "impose[ ] a substantial burden upon the core right of self-defense protected by the Second Amendment . . . ." *Heller II*, 670 F.3d at 1257.

Even if intermediate scrutiny did apply, the District still must produce substantial evidence that its restrictions on carrying firearms "will in fact" advance public safety "in a direct and material way." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) ("*Turner I*") (opinion of Kennedy, J.). But the study the District holds up as the paragon of research in this area concludes that "with the current evidence *it is not possible* to determine that there is a causal

link between the passage of right-to-carry laws and crime rates." DA 211–12 (emphasis added). This is hardly a substantial basis for believing that the District's law will advance public safety. What is more, that very study has been criticized as a "misguided" one that "should be of no interest to anyone with a serious interest in the effects of gun control laws on violence" and that "does not provide any serious basis for reversing [the] conclusion" of "[b]etter studies . . . find[ing] that [right-to-carry] laws do not affect crime rates . . . ." Gary Kleck, Comments on *Aneja et al. (2014)* 17 (Oct. 7, 2015) (unpublished manuscript), *available at* http://goo.gl/9JeuLk. The District claims that it is being held to an impossible standard of absolute "certainty" that its law will reduce violence, D.C. Opp. 14, but that is simply not so. Rather, even under the watered-down intermediate scrutiny test proposed by the District, the District still must provide "more than merely a rational basis for believing" that its carry law "is justified by an increase in public safety." *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012); *see also Heller*, 554 U.S. at 628 n.27 (rejecting rational basis review). And this the District cannot do. Indeed, as Judge Posner concluded, "[t]he theoretical and empirical evidence (which overall is inconclusive) is consistent with concluding that a right to carry firearms in public may *promote* self-defense." *Moore*, 702 F.3d at 942 (emphasis added).

3. *Heller II* and *Turner I* do not establish that the District is entitled to discovery.

Instead of identifying specific deficiencies in the record that warrant discovery, the District claims that discovery is warranted based on the D.C. Circuit's decision in *Heller II*, and the Supreme Court's decision in *Turner I*. The District suggests that because the courts in those cases remanded for further discovery, this Court cannot consolidate the preliminary and permanent injunction stages.

The District's reliance on *Heller II* and *Turner I* is a non-starter because those cases involved the application of intermediate scrutiny, and as explained, the District's carry ban is categorically unconstitutional or, at a minimum, subject to strict scrutiny. But even if intermediate scrutiny applied, the District cannot establish that discovery is necessary *in this case* simply by reciting the facts of *Heller II* and *Turner I*. Those cases only pose the question before this Court: is "the state of the record developed thus far" sufficient for the Court to decide the constitutionality of the law *sub judice*? *Turner I*, 512 U.S. at 665. As Plaintiffs have already explained, the decisions to remand in *Heller II* and *Turner I* were based on the specific records that were developed in those cases. *See* Mot. to Consolidate 14. The District must demonstrate why, despite its acknowledgement that there is "more than enough evidence" in the record to decide this case, Tr. at 58:18, "the state of the record developed thus far" is *insufficient* for this Court to render final judgment, *see Turner I*, 512 U.S. at 665.

*Heller II* nicely illustrates this point. Although the Court in *Heller II* remanded the case for the parties to develop a record about the constitutionality of certain novel registration requirements, the Court also issued a definitive ruling on the constitutionality of other provisions of the law. 670 F.3d at 1264. *Heller II* thus cannot stand for a blanket rule in favor of constant supplementation of the record; instead, it holds that so long as there is sufficient information before the Court, final judgment may be entered. The D.C. Circuit sensibly remanded with respect to the novel registration requirements in *Heller II* because the Court had just determined as a matter of first impression that intermediate scrutiny applied and the District had "fail[ed] to present *any data or other evidence*" about whether the registration requirements furthered its stated interests, and had also failed to present "*any evidence at all*" about application of the registration requirements to long guns. *Id.* at 1259 (emphases added). This case presents a far cry

from the barren record in *Heller II*. As discussed *supra*, the District and its amici have already

presented voluminous briefing, both in this case and in other related cases, about the social

science literature on gun safety, and the District has not established that it will suffer prejudice

were the Court to enter a permanent injunction now.

4. <u>The Court may rely upon the legislative facts discussed in the parties' briefs.</u>

The District also suggests that this Court cannot rely upon the historical and social

science materials cited in the parties' briefs unless those materials are formally entered into a

discovery record, D.C. Opp. 11, but this argument is entirely without merit.

Plaintiffs' motion to consolidate discussed (p. 7–8) numerous decisions from the D.C.

Circuit and elsewhere holding that "legislative facts . . . need not be developed through

evidentiary hearings," *Association of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1162 (D.C.

Cir. 1979), and that legislative facts "usually are not proved through trial evidence *but rather by*

*material set forth in the briefs*, the ordinary limits on judicial notice having no application to

legislative facts," *Daggett v. Commission on Governmental Ethics & Election Practices*, 172

F.3d 104, 112 (1st Cir. 1999) (emphasis added). The District argues that the well-established

distinction between adjudicative facts and legislative facts "simply does not exist in case law,"

D.C. Opp. 1, but the District does not bother to distinguish or even cite the wealth of cases that

Plaintiffs cited that establish that distinction.

Instead, the District relies *entirely* upon the Sixth Circuit's quotation of a note to Federal

Rule of Evidence 201, which states that judicial notice under that Rule is available for

"adjudicative facts" but not "legislative facts." *Toth v. Grand Truck R.R.*, 306 F.3d 335, 349 (6th

Cir. 2002) (quoting FED. R. EVID. 201 advisory committee's note (1972)). It is undoubtedly true

that Rule 201, by its plain terms, "governs judicial notice of an adjudicative fact only, not a

legislative fact." FED. R. EVID. 201(a). But the reason Rule 201 does not address judicial notice of legislative fact is *not* (as the District suggests) that it is somehow inappropriate to take judicial notice of such facts. To the contrary, Rule 201 does not address judicial notice of legislative facts because *it is so well-established* that such notice is appropriate that a Rule allowing for such notice is unnecessary. Legislative facts do not have to be proved "with admissible evidence," and so they do not have to be addressed by the Rules of Evidence. 21B KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5103.2 (2d ed. 2015).

The 1972 advisory committee note makes this point absolutely clear, explaining that, with respect to "legislative facts," there are *no* "formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs," and so a judge "may make an independent search for persuasive data or rest content with what he has or what the parties present." FED. R. EVID. 201 advisory committee's note (1972). As Wright & Miller explains, "Rule 201 contemplate[s] that notice of legislative facts must be freely taken, without the requirement of first showing that the fact is one of common knowledge or capable of easy and accurate verification. To do otherwise would stifle the growth and development of decisional law." 21B FEDERAL PRACTICE & PROCEDURE § 5103.2.

*Toth* is entirely consistent with this view. That decision did not hold anything relevant here about judicial notice of legislative facts. The district court in that case "did not rule" that the legislative facts at issue there "were not facts properly subject to judicial notice," and the Sixth Circuit held only that the district court did not abuse its discretion in failing to take notice of certain regulations where the evidence was irrelevant and unsupported by a proper foundation. 306 F.3d at 350. The District's suggestion that *Toth* repudiated the universally accepted distinction between legislative and adjudicative facts is meritless.

**C.   The recent decision in *Wrenn* does not affect the analysis.**

Judge Kollar-Kotelly recently denied an application for a preliminary injunction against the District's carry law in a separate case in this Court. *See* Mem. Op. & Order, *Wrenn v. District of Columbia*, No. 15-162 (D.D.C. Mar. 7, 2016), Doc. 54 ("*Wrenn* Order"). The decision follows and therefore commits many of the same errors found in the decisions of other courts that have upheld bans on the right of typical, law-abiding citizens to carry firearms in public for self-defense. For example, Judge Kollar-Kotelly declined entirely to consider whether there is any historical basis for the District's carry ban, *id.* at 11, and incorrectly applied intermediate scrutiny to the ban, *id.* at 15. Plaintiffs have already explored at length the shortcomings of these decisions, and we need not repeat those arguments here.

But one novel aspect of Judge Kollar-Kotelly's analysis merits a brief response. As explained above, the District's more-guns, more-crime rationale is precluded by *Heller III*. Judge Kollar-Kotelly attempted to distinguish *Heller III* by arguing that the decision was essentially an evidentiary one, i.e. that "the evidence presented did not support the fit of that rule with the ends identified by the District of Columbia." *Wrenn* Order 19. But that is a misreading of *Heller III*, which "accept[ed] . . . as true" the District's factual premise that the more-guns, more-crime argument is empirically correct, but then held that the argument "does not justify" the ban because its "reasoning" was invalid, as it "would justify a total ban on firearms kept in the home." *Heller III*, 801 F.3d at 280. This binding authority defeats the District's plea that it needs to present additional evidence, because, at bottom, *all* of the evidence the District says it plans to develop would purport to show that more guns carried by law-abiding citizens in public lead to more crime. Even if it were possible to demonstrate this proposition (and it is not), under *Heller III* it simply cannot suffice to justify the District's carry law.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to consolidate the preliminary injunction proceedings with the merits. No further proceedings are necessary to conclude that the District's proper reason requirement violates the Second Amendment.

Dated: March 14, 2016                    Respectfully submitted,

                                         s/ Charles J. Cooper
                                         Charles J. Cooper (Bar No. 248070)
                                         David H. Thompson (Bar No. 450503)
                                         Peter A. Patterson (Bar No. 998668)
                                         COOPER & KIRK, PLLC
                                         1523 New Hampshire Avenue, N.W.
                                         Washington, D.C. 20036
                                         (202) 220-9600
                                         (202) 220-9601 (fax)
                                         ccooper@cooperkirk.com

                                         *Attorneys for Plaintiffs*