IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATTHEW GRACE and PINK PISTOLS, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 15-2234 (RJL) |
| v. | ) ) | |
| DISTRICT OF COLUMBIA and CATHY LANIER, in her official capacity as Chief of Police for the Metropolitan Police Department, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

On March 21, 2016, in *Caetano v. Massachusetts*, No. 14-10078 (attached as Exhibit 1), the Supreme Court summarily reversed a decision by the Supreme Judicial Court of Massachusetts, which had held that the Second Amendment does not protect the possession of stun guns. The Supreme Court's unanimous decision supports Plaintiffs' claim that the Second Amendment guarantees typical, law-abiding citizens the right to bear arms in public for self-defense.

Most important, *Caetano* cannot be reconciled with the District's suggestion that the Second Amendment does not even protect a right to " 'bear arms' outside the home."[1] *Caetano* involved the prosecution of a woman who possessed a stun gun in a public parking lot, not in her home. Indeed, the Massachusetts Supreme Judicial Court explained that Caetano asked the court to interpret *Heller* and *McDonald* "to afford her a right under the Second Amendment to the United

---

[1] Defendants' Opposition to Plaintiffs' Application For a Preliminary And/Or Permanent Injunction at 17 (Jan. 15, 2016), Doc. 20 (hereinafter "D.C. Opp'n").

States Constitution to possess a stun gun *in public* for the purpose of self-defense." *Commonwealth v. Caetano*, 26 N.E.3d 688, 689 (Mass. 2015) (emphasis added). Yet the United States Supreme Court summarily vacated, on Second Amendment grounds, that court's decision upholding Caetano's conviction. If the District were correct that the Second Amendment does not protect a right to bear arms outside the home, *Caetano* would have come out the other way; there would have been no need for the Court to examine whether stun guns are "Arms" within the meaning of the Second Amendment as opposed to simply noting that Caetano was carrying a stun gun outside her home. *Cf. District of Columbia v. Heller*, 554 U.S. 570, 622 (2008) ("Had the Court believed that the Second Amendment protects only those serving in the militia, it would have been odd to examine the character of the weapon rather than simply note that the two crooks were not militiamen."). [2]

Further, *Caetano* confirms that *Heller* provides the test for evaluating restrictions on the right to "bear" arms in public no less than on the right to "keep" arms in the home. Massachusetts argued that even if the Second Amendment guarantees a right to possess a stun gun in the home, "the petitioner was arrested while possessing a stun gun in a car in the parking lot of a grocery store," and the Second Amendment has a narrower scope outside the home rather than "inside the home, where 'the need for defense of self, family, and property is most acute.' " Brief in Opposition at 16, *Caetano v. Massachusetts*, No. 14-10078 (U.S. Oct. 13, 2015) (quoting *Heller*, 554 U.S. at 628). The Massachusetts Supreme Judicial Court similarly reasoned that "[t]he conduct at issue in this case falls outside the 'core' of the Second Amendment, insofar as the defendant

---

[2] *Caetano* similarly undercuts the District's more modest argument that States may at least prohibit bearing arms in public by individuals who live in "densely populated setting[s]" and do not have "a special self-defense need." D.C. Opp'n. 14. If the Court thought the Second Amendment was limited in this manner, presumably it would have investigated whether Caetano was in an urban setting or had such a special need, but it did not.

was not using the stun gun to defend herself in her home . . . ." 26 N.E.3d at 692. But the Supreme Court made clear that *Heller* governs which arms are protected outside as well as inside the home. *Caetano*, slip op. at 1. And just as *Heller*'s "common use" test governs the class of arms that may be carried in public no less than those which may be possessed at home, so too the text-and-history analysis that *Heller* applied to the District's prohibition on possessing handguns at home—as opposed to the intermediate scrutiny urged by the District here—likewise governs whether the District may prohibit typical, law-abiding citizens from bearing arms in public for self-defense.

 *Caetano* also reiterates *Heller*'s distinction between arms "in common use" today, which may not be banned, and "dangerous and unusual weapons," which are outside the Second Amendment's scope. Slip op. at 1–2; *see also* slip op. at 4 (Alito, J., concurring in the judgment). Only the latter category of arms is subject to the Statute of Northampton, and only those arms may be banned. Thus, as Plaintiffs have previously argued, while the Statute may provide historical support for prohibitions on arms like sawed-off shotguns that are not in common use for lawful purposes, it cannot justify prohibitions on arms commonly used for self-defense such as stun guns (*Caetano*) or handguns (this case).

 Finally, *Caetano* reaffirms that arms may be banned only if they are *both* " 'dangerous *and* unusual.' " Slip op. at 1–2 (quoting *Heller*, 554 U.S. at 627) (emphasis added). As Justice Alito explained, the Court recognized that *Heller* provides "a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." Slip op. at 6 (Alito, J., concurring in the judgment). That is why, after "reject[ing] the lower court's conclusion that stun guns are 'unusual,' [the Court] d[id] not need to consider the lower court's conclusion that they are also 'dangerous.' " *Id.*

Dated: March 25, 2016                    Respectfully submitted,

                                         s/ Charles J. Cooper
                                         Charles J. Cooper (Bar No. 248070)
                                         David H. Thompson (Bar No. 450503)
                                         Peter A. Patterson (Bar No. 998668)
                                         COOPER & KIRK, PLLC
                                         1523 New Hampshire Avenue, N.W.
                                         Washington, D.C. 20036
                                         (202) 220-9600
                                         (202) 220-9601 (fax)
                                         ccooper@cooperkirk.com

                                         *Attorneys for Plaintiffs*