**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATTHEW GRACE, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>          Defendants. | Civ. Action No. 15-2234 (RJL) |

**DEFENDANTS' MOTION TO STAY
THE COURT'S MAY 17, 2016 ORDER PENDING APPEAL
AND MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY**

The District of Columbia and Metropolitan Police Chief Cathy Lanier (collectively, the District) move this Honorable Court to stay pending appeal its Memorandum Opinion and Order dated May 17, 2016 [Doc. 45, 46] (collectively, the Order), which preliminarily enjoins the District from enforcing its "good reason" requirement for issuing a license to carry a concealed handgun in public. Fed. R. Civ. P. 7(b) and 62(c).

Because the District faces irreparable harm immediately, it also moves the Court, in the interim, to issue an administrative stay to last while this Court and, if necessary, the United States Court of Appeals for the District of Columbia Circuit decide whether the Order should be stayed pending appeal.

As discussed in more detail in the accompanying Memorandum of Points and Authorities, a stay of the Order is warranted. The Order addresses serious constitutional issues of first impression in this Circuit. Granting a stay will

preserve the status quo—allowing the District to enforce a scheme that balances public safety with the safety of individuals particularly at risk of assault outside the home—while the Circuit considers whether plaintiffs have satisfied the high burden needed to justify the extraordinary relief of a preliminary injunction. It also will preserve the integrity of the district court as an institution—demonstrating respect for a coordinate judge's denial of an identical request in a different case, which is currently the subject of an expedited appeal in the Circuit. At minimum, the Court should grant a stay as to applicants other than plaintiffs here.

Pursuant to LCvR 7(m), the undersigned discussed this motion with opposing counsel, who stated that plaintiffs do not consent to the requested relief. A proposed Order is attached.

WHEREFORE, the District respectfully requests that the Court:

A.  Grant the District's Motion to Stay the Order Pending Appeal;

B.  Grant the District's Motion for Immediate Administrative Stay while the Court considers the Motion to Stay Pending Appeal; and

C.  Grant the District such other and further relief as the nature of its cause may require.

DATE: May 19, 2016.                     Respectfully submitted,

                                        KARL A. RACINE
                                        Attorney General for the District of Columbia

                                        ELIZABETH SARAH GERE
                                        Deputy Attorney General
                                        Public Interest Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON (#453765)
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J.SAINDON (#456987)
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
Email: andy.saindon@dc.gov

*Counsel for the Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MATTHEW GRACE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civ. Action No. 15-2234 (RJL) |

---

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY THE COURT'S MAY 17, 2016 ORDER PENDING APPEAL AND MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY**

**INTRODUCTION**

This Court should stay its May 17, 2016 Memorandum Opinion and Order (collectively, Order) while the District of Columbia and Metropolitan Police Chief Cathy Lanier (collectively, the District) pursue an appeal of the injunction entered against them. In the interim, the Court also should grant an immediate administrative stay of its Order while this Court and the United States Court of Appeals for the District of Columbia Circuit, decides whether the Order should be stayed pending appeal.

The Order bars the District from enforcing a critical element of its concealed-carrying regime—the requirement that suitable applicants have a "good reason" to carry a deadly weapon in public. One year ago, the district court granted this same relief to a different group of plaintiffs, barring the District from enforcing the "good reason" standard while their lawsuit was pending. *See Wrenn v. District of*

*Columbia*, 808 F.3d 81 (D.C. Cir. 2015). The D.C. Circuit granted the District's motion to stay that injunction—and thus to permit the District to enforce this critical public safety law—holding that the District had "satisfied the requirements for a stay pending appeal." *See Wrenn v. District of Columbia*, No. 15-7057, Order Granting Mot. to Stay (June 29, 2015). These same standards apply here, and this Court should follow the Circuit's lead.

Indeed, there is now even more reason to stay the injunction because this Order conflicts with an order issued by District Court Judge Colleen Kollar-Kotelly just two months ago in *Wrenn II. See Wrenn II*, No. 15-CV-162(CKK), 2016 WL 912174 (D.D.C. Mar. 7, 2016). This Court's Order—which enjoins the District from enforcing the "good reason" standard as to *all* applicants—nullifies Judge Kollar-Kotelly's order denying this relief to a narrower group, the *Wrenn II* plaintiffs. Granting a stay pending appeal would preserve the integrity of the district court while the D.C. Circuit determines whether either group of plaintiffs has satisfied the high burden necessary to justify the extraordinary relief this Court has awarded. At minimum, the Court should stay the Order at least as it applies to applicants other than plaintiffs here.

Moreover, the Court's decision goes against the weight of the case law, relying largely on a decision vacated over a year ago (*Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *vacated*, 781 F.3d 1106 (9th Cir. 2015)), and dismissing three decisions from federal Circuit courts that have upheld laws substantially similar to that at issue here. *See* Doc. No. 45 at n.21. As shown below,

a careful balancing of the interests demonstrates that a stay of the Order, and an immediate administrative stay, should issue so the District may pursue its appellate rights.

## BACKGROUND

Almost two years ago, in *Palmer v. District of Columbia*, 2014 WL 3702854 (D.D.C. July 24, 2014), the Court struck down the District's longstanding prohibition on the public carrying of concealed handguns as violating the Second Amendment to the United States Constitution. In response, the Council of the District of Columbia enacted legislation to authorize the issuance of licenses to carry concealed handguns if, among other things, the applicant has "good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol[.]" D.C. Official Code § 22-4506(a).

In December of last year, plaintiffs commenced the instant lawsuit asserting that the "good reason" requirement violates their Second Amendment rights. Compl. ¶¶ 26–28. On December 28, 2015, plaintiffs moved for a preliminary and/or permanent injunction seeking to enjoin the District from enforcing the "good reason" requirement. Doc. No. 6. This Court heard argument on plaintiffs' motion on February 2, 2016.

On March 7, 2016, in a suit presenting the same issue pending before Judge Kollar-Kotelly, she denied plaintiffs' motion for preliminary injunction, applying intermediate scrutiny to the "good reason" requirement, and finding that plaintiffs had not met their burden to show a likelihood of success on the merits or that the

balance of equities or public interest favored emergency injunctive relief. *Wrenn II*, No. 15-162 (CKK), 2016 WL 912174, *10–*14,  (D.D.C. Mar. 7, 2016). *See* Doc. No. 45 at 9. The *Wrenn II* plaintiffs appealed, expedited briefing has commenced, and the D.C. Circuit has directed the appeal to be set for oral argument in September. *Wrenn v. District of Columbia*, No. 16-7025 (D.C. Cir. May 4, 2016 (Doc. #1611772, 1611786)).

By Memorandum Opinion and Order dated May 17, 2016 [Doc. No. 45, 46], this Court granted plaintiffs' motion for preliminary injunction and enjoined the District:

> from denying concealed carry license to applicants who meet all eligibility requirements other than the requirement that the applicant demonstrate a "good reason to fear injury to his or her person or property" or "any other proper reason for carrying a pistol," as established and further defined in D.C. Code §§ 22-4506(a) and 7-2509.11 and D.C. Mun. Regs. tit. 24, §§ 2332.1, 2333.1, 2333.2, 2333.3, 2333.4, and 2334.1[.]

Doc. No. 46 at 1. The Court further ordered the District to "modify and reissue, forthwith, all District of Columbia concealed carry license application materials to be consistent with this Order and the accompanying Memorandum Opinion[.]" *Id.* at 2.

In so ruling, the Court found that "under its original meaning the Second Amendment protects a right to carry arms for self-defense in public." Doc. No. 45 at 20. The Court further found that, because the "good reason" requirement imposes a "substantial burden" on this conduct at the "core" of the Second Amendment, it must be examined under strict scrutiny. *Id.* at 27–32. The Court found that the

"good reason" requirement likely fails strict scrutiny because, although the District's interests in preventing crime and protecting public safety are compelling, the requirement is not "narrowly tailored," as it is not "targeted at keeping guns away from the people who are likely to misuse them or situations where they are likely to be misused." *Id.* at 39.

The Court also found that plaintiffs will suffer irreparable harm absent a preliminary injunction, because they will likely show that "their Second Amendment rights are being infringed each and every day the District continues to enforce the 'good reason' requirement[.]" *Id.* at 42.

Finally, the Court held that the balance of equities and the public interest favors the grant of a preliminary injunction, rejecting the District's argument that an injunction requiring the District to grant concealed-carry licenses without regard to the "good reason" standard would have a negative public-safety impact on District residents and visitors. *Id.* at 43.

## LEGAL STANDARD

In deciding whether to grant a stay pending appeal, the Court should consider whether (1) the District is likely to succeed on the merits; (2) irreparable harm to the District will result if the stay is not granted; (3) others will be harmed without a stay; and (4) the public interest favors granting the stay. *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 168–69 (D.D.C. 2014) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). "[A] strong showing of one factor may excuse a relatively weaker showing on another."

*Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 97 (D.D.C. 2011) (citing *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009)).

The grant of a stay is a matter of "judicial discretion" that is "dependent upon the circumstances of the particular case." *Barko*, 4 F. Supp. 3d at 169 (quoting *Nken v. Holder*, 556 U.S. 418, 419 (2009) (citations omitted)).

Courts, however, have routinely held that a stay pending appeal is warranted in cases presenting difficult and unsettled legal questions. *See Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13 (D.D.C. 2014) (granting in part stay pending appeal) ("Though the Court disagrees with Alaska's position, and finds there to be a low likelihood of success on the merits, it recognizes that the case presented difficult and substantial legal questions . . . ."); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22–23 (D.D.C. 2003) (granting stay pending appeal, where, despite risks of harm to plaintiffs, case clearly presented "a serious legal question" on issue of first impression); *see also Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013) (staying preliminary injunction pending appeal due to, among other things, "the novelty of the constitutional issues"). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences, if the public welfare or convenience will thereby be promoted." *Feld v. ASPCA*, 523 F. Supp. 2d 1, 5 (D.D.C. 2007) (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971)).

## ARGUMENT

## I.   <u>The Court Should Grant A Stay Pending Appeal.</u>

The preliminary injunction grants the plaintiffs relief on a novel constitutional challenge to a provision the Council has found necessary to prevent an increase in gun violence in the District of Columbia. The District satisfies each of the four factors supporting a stay, and the Court should grant a stay to preserve the status quo as it stood prior to the Court's Order to enable the District to obtain clarification from a higher court on a crucial constitutional issue. *See Nken*, 556 U.S. at 421 ("[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.") (quoting *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)). *See also Citizens for Responsibility & Ethics in Wash. v. Office of Admin., Executive Office of the President*, 593 F. Supp. 2d 156, 159 (D.D.C. 2009) ("a stay pending appeal 'is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit.'") (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

Because the relief here changed the status quo, plaintiffs should have had to satisfy an even heavier burden. *See, e.g., Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C. 2013) (where plaintiff seeks a mandatory injunction, court has required plaintiff to meet a higher standard and show "extreme or very serious damage" or that he is "clearly entitled" to immediate relief); *In re: Guantanamo Bay Detainee Litig.*, 570 F. Supp. 2d 13, 17 n.3 (D.D.C.

2008) (same) (quoting *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001)). The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

### A.   The District Is Likely To Succeed On The Merits, And At Least Has Raised Substantial Questions On The Merits.

To establish a "substantial likelihood of success," and thus justify a stay pending appeal, "[i]t will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Baker*, 810 F. Supp. 2d at 97 (quoting *Holiday Tours*, 559 F.2d at 844); *see Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) ("courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay") (citing *Cuomo*, 772 F.2d at 978)); *Holiday Tours,* 559 F.2d at 844–45 (noting that courts may issue a stay "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained").

Here, the questions the District will raise in its appeal of the Order have already been held to satisfy this standard. When the District appealed a similar preliminary injunction a year ago, the D.C. Circuit issued an immediate administrative stay, followed by a full stay pending litigation. *See Wrenn*, No. 15-7057, Order Granting Administrative Stay (June 12, 2105), Order Granting Mot. to

Stay (June 29, 2015). The Circuit held that the District had "satisfied the requirements for a stay pending appeal." *See Wrenn*, No. 15-7057, Order Granting Mot. to Stay (June 29, 2015). Nothing has changed since then—the "good reason" standard remains the cornerstone of the District's public carrying law. And this Court's Order, which applies to *every* applicant, increases the risk to the public even more than the order stayed in *Wrenn*, which applied only to those plaintiffs.

And there is more evidence that the District's appeal has substantive merit. When *Wrenn* was remanded and reassigned, another district court judge reached the opposite conclusion as this Court, finding the District likely to prevail in its defense of the "good reason" standard and concluding that the equities tip in favor of allowing the District to enforce its public-safety law while litigation is pending. "Guided by the [D.C. Circuit's] analysis in [*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"),] and persuaded by the thorough analyses of other 'good reason' licensing schemes that have been conducted by other Circuit Courts of Appeals," Judge Kollar-Kotelly held that, "insofar as the challenged requirements of the District's licensing scheme impinge on a Second Amendment right, those requirements warrant intermediate scrutiny," "whether or not the ability to carry handguns in public is considered part of the 'core lawful purpose' protected by the Second Amendment." *Wrenn II*, 2016 WL 912174 at *7. And, Judge Kollar-Kotelly concluded, the plaintiffs had not "address[ed] the evidence on which the D.C. Council relied in creating the licensing scheme or the additional evidence that

Defendants have identified that they would present in support of that scheme in this case." *Id.* at 22. Plaintiffs here likewise fail to counter this evidence.

The serious and substantial nature of the District's argument is amply demonstrated by the weight of the case law. The Second Circuit, Third Circuit, and Fourth Circuit are the only Circuits that have addressed and definitively resolved the constitutionality of a "good reason" requirement, and all three hold that, if the requirement implicates the Second Amendment at all, intermediate scrutiny applies and the law satisfies that standard. *See Drake v. Filko*, 724 F.3d 426, 435 (3d Cir. 2013) (applying intermediate scrutiny to New Jersey's "justifiable need" requirement); *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013) (applying intermediate scrutiny to "good-and-substantial-reason requirement for obtaining Maryland handgun permit"); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96–97 (2d Cir. 2012) (applying intermediate scrutiny to New York State's "proper cause" requirement); *see also United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) (holding that only intermediate scrutiny "is necessary with respect to laws that burden the right to keep and bear arms outside of the home").

As Judge Kollar-Kotelly explained, "[t]he consistency of those results emphasizes the steep hill that Plaintiffs have to climb at the preliminary injunction stage, where the burden is on them to make a 'clear showing' of the propriety of the 'extraordinary remedy' of a preliminary injunction." *Wrenn II*, 2016 WL 912174 at *11 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The District's demonstration of a reasonable fit between the "good reason" requirement

and its undisputedly compelling interests in promoting public safety and reducing handgun violence was at least as detailed as that presented and found sufficient in *Kachalsky*, *Drake*, and *Woollard*. How the "good reason" standard in California will be affected by further developments in *Peruta* is unclear, but the body of appellate case law should call for a cautionary approach by staying the Order here.

Because of the novelty of the constitutional issues, the seriousness of the issues, the split among judges of this Court, and the strength of arguments accepted by three appellate courts, the District is likely enough to succeed on the merits that the court should issue a stay pending appeal while it pursues its appellate rights. *See Akiachak Native Cmty.*, 995 F. Supp. 2d at 13; *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 56 (D.D.C. 2009) (granting stay pending appeal where preservation of the status quo "squarely favors respondents" where "[t]he issues presented are novel and weighty—fundamental constitutional questions" that "present 'serious legal questions … that are so serious, substantial, and difficult as to make them a fair ground for litigation'") (citation omitted). An immediate stay of the injunction while the District pursues an appeal (and moves forward with developing the record at the trial court level) will keep in place the primary feature of this important public-safety measure.

**B.    The District Will Suffer Irreparable Harm In The Absence Of A Stay.**

The Court has enjoined the District from enforcing, as to *all* concealed-carry applicants (not just the plaintiffs), a provision at the very heart of its statutory regime: the imposition of a "good reason" requirement for those who want to carry

firearms in public. This injunction will cause irreparable harm to the District and the public.

The District offered considerable evidence that the "good reason" standard is necessary to prevent crime and promote public safety. When it enacted the law, the Council primarily relied on a 2014 Stanford University study led by Professor John Donohue III, an economist, legal scholar, and leading empirical researcher, who explained that "[t]he totality of the evidence based on educated judgments about the best statistical models suggests that right-to-carry laws"—which is what the District's law will be if the injunction is not stayed—"are associated with substantially higher rates of aggravated assault, rape, robbery and murder." District's Appendix in Opposition to a Preliminary Injunction (DA) 17; *see* DA 133–240, Donohue, *The Impact of Right to Carry Laws and the NRC Report: The Latest Lessons for the Empirical Evaluation of Law and Policy* (Sept. 4, 2014). The Council's finding is entitled to deference under any level of heightened scrutiny. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 29, 33 (2010) (affording deference under strict scrutiny to Congress's rejection of claim "that ostensibly peaceful aid would have no harmful effects"); *Turner Broad. Sys. Inc. v. FCC*, 520 U.S. 180, 199 (1997) (affording deference under intermediate scrutiny even "with respect to conflicting … predictions"); *see also Heller II*, 670 F.3d at 1269 ("It is not [the Court's] place … to determine in the first instance whether [a firearm restriction] would promote important law-enforcement objectives.").

Moreover, the District proffered additional evidence in opposition to plaintiffs' motion for a preliminary injunction, which demonstrated the risks inherent in converting this crowded city to a right-to-carry jurisdiction. These studies showed that "shall-issue laws have resulted, if anything, in an increase in adult homicide rates," DA 243, Jens Ludwig, *Concealed-Gun-Carrying Laws and Violent Crime: Evidence from State Panel Data*, 18 Int'l L. Rev. L. & Econ. 239, 241 (1998); that "[f]or robbery, many states experience increases in crime" after enacting right-to-carry laws, DA 262, Hashem Dezhbakhsh & Paul Rubin, *Lives Saved or Lives Lost? The Effects of Concealed-Handgun Laws on Crime*, 88 Am. Econ. Rev. 468, 473 (1998); and that gun-related deaths are over four times higher in jurisdictions with lax (or non-existent) controls on public carrying, Libby Isenstein, *The States with the Most Gun Laws See the Fewest Gun-Related Deaths*, National Journal (Aug. 28, 2015), available at http://www.nationaljournal.com/s/53345/states-with-most-gun-laws-see-fewest-gun-related-deaths. And the District referenced the expert testimony relied on by the Fourth Circuit in *Woollard*, explaining the many ways public carrying increases the risk to the public *even when the carrier is not at fault.* 712 F.3d at 879–80.

This Court did not reject this evidence. *See* Order at 36–40. Rather, it found *any* effort to limit public carrying by law-abiding citizens based on a "good reason" standard impermissible. Order at 38. At least for purposes of the stay analysis, however, the District's evidence of the harms caused by public carrying remains highly relevant. District residents, through their elected representatives, have

decided that allowing public carrying without "good reason" is inconsistent with public safety. And the District has offered considerable evidence to support this conclusion.

Enjoining the "good reason" requirement would have a negative impact on District residents and visitors. Requiring the District to issue concealed-carry licenses to otherwise suitable applicants would directly affect the District's public spaces. Unlike possession in a person's home, public carrying subjects everyone who occupies those places to the dangers, intentional and accidental, presented by handgun possession. If the Court's injunction later is overturned, after licenses were issued to applicants who cannot show "good reason" to carry, no relief will be available to remedy the harms caused to the District's regulatory scheme, not to mention any accidental or deliberate shootings that might have occurred in the interim from the presence of additional, concealed-carry guns. *See FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 86 (D.D.C. 2010) (irreparable harm may be shown where no "adequate compensatory or other corrective relief" will be available later) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm.*, 259 F.2d 921, 925 (D.C. Cir. 1958)). The Court found that plaintiffs have shown irreparable harm based on "intangible and unquantifiable interests," *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011), but surely District residents and visitors have countervailing interests in safe public spaces—and there is no conceivable way that harm to those interests could be remedied if this Court's injunction is struck down on appeal.

As the Court recognized, "any time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." Doc. No. 45 at 42; *see Maryland v. King*, 133 S. Ct. 1, 3 (July 30, 2012) (Roberts, C.J., in chambers).[1] The District, like the States, has a strong interest in enforcing its laws. *See, e.g., Grand Jury Proceedings of John Doe v. United States*, 842 F.2d 244, 248 (10th Cir. 1988) (holding that a claimed First Amendment privilege is "outweighed by the government's interest in investigating crimes and enforcing the criminal laws").

The "good reason" standard is critically important and—as the analyses in *Kachalsky*, *Woollard*, and *Drake* demonstrate—it is the essential component of a scheme crafted to balance public safety with the needs of individuals particularly at risk. Without this standard, the District becomes a "right to carry" regime, despite the Council's legislative judgment based on considerable evidence that such regimes

---

[1]    *See also Strange v. Searcy*, 135 S. Ct. 940 (Feb. 9, 2015) (Thomas, J., dissenting) (citations omitted):

When courts declare state laws unconstitutional and enjoin state officials from enforcing them, our ordinary practice is to suspend those injunctions from taking effect pending appellate review. Although a stay is not a matter of right, this practice reflects the particularly strong showing that States are often able to make in favor of such a stay. Because States are required to comply with the Constitution, and indeed take care to do so when they enact their laws, it is a rare case in which a State will be unable to make at least some showing of a likelihood of success on the merits. States also easily meet the requirement of irreparable injury, for "'[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" The equities and public interest likewise generally weigh in favor of enforcing duly enacted state laws.

are associated with substantially higher rates of violent crime. *See* Doc. No. 20 at 4 (citing DA at 17, 133–240). The District has more than satisfied its burden of demonstrating irreparable harm to warrant a stay while its appeal is pending.

## C. THE BALANCE OF THE EQUITIES FAVORS THE DISTRICT

The balance of the equities here favors a stay, which would preserve the status quo and allow for an orderly process, including appellate review, to determine the appropriate extent of "public carry," and, at the same time, limit the public's confusion and other unintended consequences flowing from the Court's Order. This legal issue previously has not been resolved by any controlling court, and this Court's decision conflicts with the recent decision of Judge Kollar-Kotelly. These factors militate in favor of a stay pending appeal. *See Citizens for Responsibility & Ethics in Wash. v. Cheney*, 577 F. Supp. 2d 328, 338 (D.D.C. 2008) (preliminary injunction granted where movant presented "a complex issue of first impression"); *Ctr. for Int'l Environmental Law*, 240 F. Supp. 2d at 22–23 (stay warranted where "case presents an issue of first impression"); *see also Klayman*, 957 F. Supp. 2d at 43–44 (*sua sponte* staying preliminary injunction pending appeal, because of "the novelty of the constitutional issues").

The risk of a gun-related tragedy—accidental or deliberate—involving new licensees who have no particularized fear of any specific danger to their safety outweighs plaintiffs' speculative fears about any imminent need to defend themselves from a random, public attack during the pendency of this litigation.

Plaintiffs' fears are necessarily speculative—their theory, after all, is that they need this Court's assistance because they cannot show "good reason" to carry.

This Court found that plaintiffs demonstrated irreparable harm because "[t]heir Second Amendment rights are indeed being violated, and, as our Circuit Court has made clear, 'the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" Order at 40 (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). But even assuming this applies to Second Amendment rights, the D.C. Circuit has also held that the "presumed" harm from such a violation does not, in and of itself, weigh heavily in any balance of the equities. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006). Rather, when a constitutional injury is presumed but no *tangible* irreparable harm is demonstrated, "[i]t is the[] other prongs"—"a substantial likelihood of success on the merits, that the injunction would not substantially injure other interested parties, and that the public interest would be furthered by the injunction"—"that will ultimately determine" whether the relief is warranted. *Id.* As such, the Circuit has concluded that finding that an alleged constitutional violation creates a presumption of irreparable harm does "not … in any way lessen[] the burden for parties seeking preliminary injunctive relief against purported [constitutional] violations." *Id.* "It merely focuses greater attention on the three other factors that indisputably enter into the preliminary injunction determination." *Id.*

This Court only recently has declared affirmatively the right to carry a handgun in public in the District, after decades (if not centuries) without such a right. A brief delay in this Court's injunction is warranted during appellate proceedings. This case involves important constitutional questions that affect the right of District residents to exercise some control over the quantity of handguns carried in public. As the Supreme Court has explained:

> We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.

*Landis*, 299 U.S. at 256. This is just such a case, and the Court should find that the equities strongly favor a stay.

### D. A STAY PENDING APPEAL SERVES THE PUBLIC INTEREST

The public interest is not served by the invalidation of the central component of the District's public-carry regime, the "good reason" requirement as to *all* applicants, not just plaintiffs. This relief is overbroad. *See, e.g., Nebraska Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 435 F.3d 326, (D.C. Cir. 2006) ("An injunction must be narrowly tailored to remedy the specific harm shown.") (quoting *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976)). *Cf. Winter*, 555 U.S. at 24 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quoting *Weinberger v.*

*Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Thus, at minimum, the Court should stay the Order as to applicants other than plaintiffs here.

In fact, a full stay is warranted. "[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312 (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944)). Here, nothing can compensate the District or the public at large for the invalidation of its duly enacted statute. *See Church & Dwight*, 756 F. Supp. 2d at 86 (irreparable harm may be shown where no "adequate compensatory or other corrective relief" will be available later); *see also, e.g., Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling.") (quoting *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 338 (1933)).

Not so long ago, carrying firearms in public in the District was prohibited. *Palmer v. District of Columbia* struck down that prohibition. The District swiftly enacted a comprehensive regulatory scheme to comply with that decision and the Second Amendment. However, the Court's instant Order strikes down the central component of that scheme, nullifying an important public policy of the District's elected officials. A stay pending appeal serves the public interest in allowing an orderly appellate process to proceed while these substantial issues are resolved.

II.    **In The Alternative, And At The Very Least, This Court Should Stay The Provision Of The Injunction Requiring The District To Modify Its Application Materials.**

In its Order, this Court requires the District to "modify and reissue, forthwith, all District of Columbia concealed carry license application materials to be consistent with this Order and the accompanying Memorandum Opinion[.]" Doc. No. 46 at 2. This Court should either stay enforcement of this provision or strike it from the injunction altogether. It is against the interests of the District and the public, because it requires prompt changes to official forms that may well have to be changed back if a stay is granted by the D.C. Circuit or if the District prevails on appeal. But, what is more important, it could seriously injure any applicant for a concealed-carry license who *can* demonstrate "good reason" to carry. If the application does not invite an applicant to demonstrate his or her ability to satisfy the "good reason" standard, and the District prevails in obtaining a stay of this injunction or prevails on its appeal of this injunction, *every* license issued under the modified application will be presumptively invalid. The District will have no way of knowing which applicants could have demonstrated "good reason" and which could not, and those most vulnerable—those most in need of a license—could have their licenses revoked.

The District can comply with both the letter and the spirit of this injunction without modifying its application materials. It would be in the best interest of everyone—including applicants for concealed-carry licenses—to allow the District to do so.

III. **The Court Immediately Should Issue An Administrative Stay.**

The District further requests that the Court immediately issue an administrative stay of its Order while the Court, and if necessary the D.C. Circuit, considers whether to grant a full stay pending appeal. Granting an administrative stay would minimize unnecessary disruption and confusion. *See, e.g., Klayman*, 957 F. Supp. 2d at 44 & n.71 (entering preliminary injunction but staying order *sua sponte* pending appeal "in light of the significant national security interests at stake in this case and the novelty of the constitutional issues").

If no administrative stay were issued, for instance, the District will likely be be forced to issue licenses—absent "good reason"—while its motion to stay is pending before this Court. If this Court or the D.C. Circuit were later to grant the District's motion and issue a stay, the District would have to revoke the licenses that had been issued. In *Wrenn*, the D.C. Circuit granted an administrative stay while it considered the District's motion for a full stay pending appeal. *See Wrenn*, No. 15-7057, Order Granting Administrative Stay (June 12, 2105). Given that the proceedings on the District's motion to stay likely will be brief, this Court should follow the Circuit's lead and grant this requested relief.

## CONCLUSION

For the foregoing reasons, the District respectfully requests that its Motion for Stay Pending Appeal and for An Immediate Administrative Stay be granted.

DATE: May 19, 2016.                     Respectfully submitted,

                                        KARL A. RACINE
                                        Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Deputy Attorney General
Public Interest Division

/s/ Toni Michelle Jackson
TONI MICHELLE JACKSON (#453765)
Chief, Equity Section

/s/ Andrew J. Saindon
ANDREW J.SAINDON (#456987)
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
Email: andy.saindon@dc.gov

*Counsel for the Defendants*